ROGERS v. HUSSEY *et al.*

1. **Notice**: ARISING FROM POSSESSION. The rule that possession of real estate imports constructive notice of the equities of the person in possession, and that a subsequent purchaser will take the premises subject thereto, will receive a reasonable construction, and not be applied in a case where its application would be unreasonable.

2. —— Thus, A purchased certain real estate of B, receiving from him a title bond therefor, and entering upon the possession of the premises. Subsequently C recovered a judgment against B. Subsequent to this A having paid the purchase-money due on the title bond, received from B a deed for the land, which was placed on record, and constituted the evidence of his title. Under this state of facts execution was issued on the judgment of C and thereunder the land was sold. *Held*,

    1. That the possession of A was not sufficient to charge the purchaser at such sale with notice of equities of A, existing prior to the date of the recorded deed from B to A, and that he would be justified in supposing that the only title A had was derived from such deed.

    2. That the judgment under which the execution sale was made being prior in date to the deed, the purchaser at the sale had the superior title.

3. **Conveyance**: AFTER-ACQUIRED TITLE. Under our statute, an after-acquired title by the grantor inures to his prior grantee.

4. **Notice**: EFFECT OF. Where a grantee acquires his title to lands without notice of outstanding equities in a third party, a purchaser from such grantee will take an indefeasible title, notwithstanding he had notice of such equities.

*Appeal from Polk District Court.*

THURSDAY, JUNE 19.

ON the 25th of July, 1860, B. F. Allen commenced an action against T. R. Rogers, to recover rent for a portion of lot two, block C, Griffith's first addition to East Fort Des Moines.

On the 20th of February, 1873, Rogers filed his answer denying Allen's ownership of the property, and by way of cross-bill in equity making Warren Hussey a party, as a purchaser from Allen, and praying that the title to the property be quieted in him.

Rogers v. Hussey.

On the 10th day of July, 1867, the court, upon an *ex parte* hearing, dismissed Allen's petition for rent and confirmed defendant's title to the property.

On the 27th day of October, 1869, the motion of Warren Hussey for a retrial, under section 3160 of the Revision, was sustained.

On the 30th of October, B. F. Allen dismissed his action for rent.

On the 29th of November, 1869, defendant filed an amendment to his cross-bill making Samuel A. Ayres a party, as a purchaser from the grantee of Hussey, *pendente lite*, and further amending his cross-bill. Hussey and Ayres answered this amended cross-bill.

Upon the final hearing the court confirmed the former decree, set aside the title of Ayres, found that Rogers was entitled to rent to time of trial and ordered a reference for the determination of the amount of rent due.

Hussey and Ayres appeal. The facts are very complicated, and will be better understood, if only those material are stated in connection with the various branches of the case discussed.

*Nourse & Kauffman* for the appellants.

*M. D. McHenry* and *J. S. Polk* for the appellees.

DAY, J. — I. John Mumma, being the owner of the property in controversy, sold the same on the 4th day of March, 1857, to 1. NOTICE: arising from possession. T. R. Rogers, and executed to him a bond for a deed. Rogers immediately commenced making repairs upon the property and moved into it about the 15th of March, 1857, and occupied it as his homestead until the 1st of May, 1858. Shortly after his purchase Rogers paid all the consideration money except $250, and on the 1st of April, 1858, he obtained from Mumma a warranty deed therefor, which was filed for record April 30, 1858.

On the 28th day of October, 1857, Dewey & Tubby recovered judgment in the district court of Polk county against

John Mumma. The property in question was sold under this judgment to Daniel K. Robinson, on the 30th of December, 1858, and a certificate of purchase executed to him. On the 31st of December, 1859, a sheriff's deed was executed to B. F. Allen, the assignee of the certificate of purchase.

From this statement it is apparent that at the time Dewey & Tubby recovered their judgment Mumma had sold the property, received the greater portion of the purchase-money, and the purchaser was in possession. The judgment, therefore, was no lien upon this property. Notwithstanding this, however, if the purchaser at sheriff's sale made his purchase without notice, actual or constructive, of Rogers' rights, he would be protected to the same extent as any other innocent purchaser for value and without notice. See *Gower* v. *Doheney*, 33 Iowa, 36, and cases cited. And here it is urged by appellant, that although the evidence shows that Rogers was in possession until the 1st of May, 1858, there is no proof that he was in possession on the 30th of December, 1858, the date of the sheriff's sale; and hence there is nothing to affect the purchaser at such sale with notice of his equities. If the appellants' view of the evidence is correct, the title acquired by the purchaser at sheriff's sale must be sustained, for although the deed from Mumma to Rogers was upon record at the time of the sheriff's sale, yet it bore date April 1, 1858, long subsequent to the date of the Dewey & Tubby judgment. But in the view which we adopt it is unnecessary to inquire into the fact of possession at the date of the sheriff's sale.

The principle upon which one buying real estate in the actual possession of a third person takes it subject to his equities is, that good faith and reasonable prudence in dealing require the purchaser to inquire of such person what claim he asserts to the property, and the law conclusively presumes that the purchaser has acquired all the information which a timely and prudent inquiry would have given him. But this rule, like every other, must have a reasonable construction.

The evidence shows that Rogers left the property May 1,

1858, and went to Pennsylvania. If he was in possession of the property at the date of the sheriff's sale, it was through his tenant. If the purchaser at sheriff's sale had inquired of this tenant in virtue of what right he held possession, he would have learned that he took possession since the 1st of May, 1858, as the tenant of Rogers, and that he still remained in possession in that capacity. Now if the records showed no title in Rogers by which his assumption of ownership could be explained, the natural inference would be, that he either had or claimed some equitable interest in the property. And being thus put upon inquiry good faith might well require that the purchaser should demand of Rogers himself what title he claimed. But the fact is, that at the time of the sheriff's sale, Rogers had the legal title of record, dating back of the time of taking possession by the tenant. Hence, if he had learned that the person in possession held as the tenant of Rogers, he would have ascertained a fact, not inconsistent, but perfectly consistent with the state of the title, as apparent of record. The record title would fully explain the fact of possession. It would be natural and reasonable for any one under such circumstances to refer the fact of possession to the legal title. No one would think of inquiring whether there was not also an equitable title, ante-dating the legal title. If it is not probable and natural that such inquiry would be made, the law does not require it to be made. The purchaser at sheriff's sale was justified therefore in supposing that the only title which Rogers had, was acquired under a deed of date subsequent to the judgment under which he proposed to buy. Hence Allen acquired the absolute estate through the sheriff's deed, and the title of Rogers was thereby entirely divested. 3 Washburne's Real Property (3d ed.), p. 284.

On the 26th of March, 1861, Warren Hussey, by warranty deed, conveyed the property in dispute to J. B. Stewart.

On the 29th of September, 1862, B. F. Allen conveyed said property to Warren Hussey. This deed, though a quit-claim,

3. CONVEYANCE: after-acquired title. vested in Hussey the interest of Allen, which we have already seen was an indefeasible estate,

and inured immediately to the benefit of Stewart, Hussey's grantee. Rev., § 2210 ; *McConnel* v. *Reed*, 4 Scam. 117.

On the 1st of June, 1864, Stewart conveyed to Ayres. Allen having once acquired an absolute estate, all the subsequent purchasers took an indefeasible title, notwithstanding they may have had notice of Rogers' claim. Story's Eq. Jur., § 409. It follows that the court erred in seting aside Ayres' title, in declaring Rogers the owner of the property, and in finding him entitled to rent therefor from April 25, 1860, to the time of trial.

*4. NOTICE: effect of.*

Other questions are presented in the case, and discussed by counsel. Allen claims the property also, under a subsequent sheriff's sale made upon a judgment recovered by him against Shaw, Rogers and Huskins.

Ayres also makes claim to the property under a purchase at sheriff's sale, upon a judgment in favor of *Charles O'Brien* v. *William Francis & T. R. Rogers.*

But as, in the view above expressed, Rogers' estate was entirely divested by the sale under the Dewey & Tubby judgment, the questions arising upon the subsequent sales need not be discussed.

II. In March, 1860, Crystal, Rogers' tenant, left the property and surrendered possession to the agent of Rogers. Hussey took possession claiming that he had purchased the property from Allen. An action of forcible entry and detainer was instituted on behalf of Rogers, which resulted in a judgment for him for the possession of the property. Hussey then entered into a written agreement with Rogers, through his agent, that if Rogers would forbear execution upon the judgment he would hold possession from him as his tenant, and pay $5 per month for the rent of the premises from the 25th of April, 1860, to the 24th of June, 1861. It was further stipulated that by the making of this agreement Hussey waived no right which he might have to the title absolute to said property. When B. F. Allen commenced his action against Rogers for rent, Hussey was garnished, and prevented from making any payments upon this contract. As before seen, the

action of Allen for rent was subsequently dismissed, and the garnishment discharged.

Rogers is entitled to a judgment against Hussey for the rent accrued, pursuant to this agreement, amounting to $70.

A decree will be entered in this court dismissing the cross-bill of Rogers so far as it concerns the title to the property in dispute, confirming the title thereof in S. A. Ayres, and awarding Rogers a judgment of $70 against Hussey.

Reversed.

COLE, J., having been of counsel, took no part in this decision.

DAY, J.— A petition for rehearing was filed, and upon a careful consideration thereof we are led to adhere to the conclusions above announced.

Since filing the opinion our attention has been directed to the cases of *McMeechan* v. *Griffing*, 3 Pick. 150; *Leach* v. *Ansbacher*, 55 Penn. St. 89; and *Plumer* v. *Robertson*, 6 S. & R. 184, strongly sustaining the views above expressed.

The last case is directly in point, and follows substantially the same line of argument as that pursued in the foregoing opinion.

In *Baldwin* v. *Thompson*, 15 Iowa, 504, the question here discussed was not considered.

The petition for rehearing is

Overruled.