(22 App. Div. 456.)

DOODY v. HOLLWEDEL.

(Supreme Court, Appellate Division, Second Department.   November 30, 1897.)

1. DEED—EXECUTION UNDER POWER.
    Under 1 Rev. St. p. 737, § 124, providing that every instrument executed by the grantee of a power shall be deemed a valid execution of the power, though such power be not recited or referred to therein, a deed by a duly-authorized executor is valid, though it only refers to his power under a will by his signature, which he affixed as "executor of" testator.

2. VENDOR AND PURCHASER—PRESUMPTIONS OF BONA FIDES.
    The grantee in a deed which recites the payment of a valuable consideration is presumed to be a bona fide purchaser as against the grantee in a prior unrecorded deed.

3. JUDGMENT—PRIORITY OF LIENS.
    After a judgment lien on land has attached, conveyances or incumbrances executed by the judgment debtor constitute no liens on the land nor clouds on the title, as against those claiming under a purchaser at the execution sale under the judgment.

4. CANCELLATION OF TAX SALES—VALIDITY OF STATUTE.
    Laws 1885, c. 405, amending the charter of Brooklyn, and providing for the cancellation of certain tax sales upon which no lease had been given, is constitutional and valid.

Appeal from special term.

Action by James Doody against William F. Hollwedel. Plaintiff had judgment, and defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Charles M. Stafford, for appellant.

John Brunnemer, for respondent.

CULLEN, J. This action was brought to compel the specific performance of a contract by which the defendant agreed to purchase from the plaintiff a certain lot of land in the city of Brooklyn. The action was resisted on the ground that the plaintiff had not a perfect title to the land which he agreed to convey. Twenty-one objections to or defects in the plaintiff's title are set forth in the answer. The special term held the plaintiff's title good, and rendered judgment in his favor. From that judgment this appeal is taken.

That the character and force of the objections to the plaintiff's title may be seen, it is necessary to first state the source and chain of that title. On the trial it was admitted that on and prior to September 23, 1851, one Parmenus Jackson was the owner of the premises in dispute, which were known on a map of the "Hay-Scale Farm," filed in the office of the register of the county of Kings, as "Lot 266." Title was traced from Jackson in the following manner: A judgment recovered against Jackson on September 23, 1851, for $114.76. Execution issued thereon, and premises sold on September 4, 1856, to Herbert T. Moore. Deed from sheriff to Moore on December 5, 1857. Deed from Moore and wife to Henry O. Middleton, October 26, 1860. Deed from Middleton to Sarah B. James on November 24, 1860. Sarah B. James died leaving a will, proved before the surrogate of the county of New York on September 19, 1862.

By this will Manley James was appointed executor thereof, and authorized to convey the testatrix's real estate or any part thereof. Deed from Manley James, executor of Sarah B. James, to Greenleaf K. Sheridan, on October 21, 1869. Deed from Sheridan and wife to Bernard Sheridan on October 28, 1871. Bernard Sheridan died leaving a will, proved before the surrogate of the county of Kings on October 7, 1884, by which he appointed Edwin R. Sheridan, Vincent Tilyou, and Theodore W. Sheridan executors, and empowered them to sell his real estate. Letters testamentary to Manley James as executor of Sarah B. James, and to Theodore W. Sheridan and others as executors of the will of Bernard Sheridan. Deed from Theodore W. Sheridan as sole surviving executor to the plaintiff on February 26, 1896.

Two of the defendant's objections go to links in this chain of title. The deed from James' executor to Greenleaf K. Sheridan is in the following form: "This indenture, made * * * between Manley James, executor of Sarah B. James, of the first part, and Greenleaf K. Sheridan, of the second part." It then purports to grant, bargain, and sell premises, including those in dispute,—reciting: "All of the above-mentioned lots being those conveyed by Herbert T. Moore and H. O. Middleton to Sarah B. James, by deed dated November 24th, 1860, recorded," etc. The deed is signed "Manley B. James, Executor of Sarah B. James." No further reference to the character in which Manley B. James assumed to convey the property, nor of the authority he possessed to make such a conveyance, is set forth in the deed, than that already recited. We think the deed is a sufficient exercise of the power granted by the will of Sarah B. James. By 1 Rev. St. p. 737, § 124, "every instrument executed by the grantee of a power, conveying an estate or creating a charge, which such grantee would have no right to convey or create, unless by virtue of his power, shall be deemed a valid execution of the power, although such power be not recited or referred to therein." Within this statutory provision the deed of James' executor would seem effectual. Wright v. Railroad Co., 92 Hun, 32, 36 N. Y. Supp. 901.

The defendant placed in evidence a deed from Sarah B. James and her husband to one W. B. Gitt, dated December 1, 1860, recorded November 19, 1870. It thus appears that this deed was not recorded until nearly a year subsequent to the record of the deed from the executor to Sheridan. No evidence was given to show that Sheridan had any knowledge of the prior conveyance to W. B. Gitt. The deed to Sheridan recited a valuable consideration,—the payment of the sum of $150. This recital is prima facie evidence of the payment of that consideration, even as against strangers. Jackson v. McChesney, 7 Cow. 360; Wood v. Chapin, 13 N. Y. 509; Lacustrine Fertilizer Co. v. Lake Guano & Fertilizer Co., 82 N. Y. 476. The presumption must therefore obtain that Sheridan was a bona fide purchaser for value and without notice, and the title derived through him is not impeached by evidence of the deed to Gitt.

As further objections to the plaintiff's title, the defendant put in evidence many conveyances and incumbrances which do not appear

in the chain of title above detailed. Some of these do not seem to be connected with or proceed from, in any respect, the title of Parmenus Jackson, the conceded owner of the premises in 1851. Such instruments can create no cloud upon the plaintiff's title. The conveyance and incumbrances made by Jackson, or persons tracing title from him (other than those who appear in the plaintiff's chain), are all subsequent to the judgment recovered against Jackson on September 3, 1851, which is the original source of the plaintiff's title. The sale under the execution issued on that judgment devested Parmenus Jackson, and all persons claiming under him subsequent to the recovery of the judgment, of any title to or claim upon the premises. Conveyances or incumbrances executed by such persons constitute no liens on the land nor clouds upon the plaintiff's title; and it is therefore not necessary to discuss their details.

It was further objected that the premises were incumbered with many old sales for taxes and assessments. By chapter 405 of the Laws of 1885, amending the charter of the city of Brooklyn, it was enacted that all sales made more than eight years prior to the passage of the act, upon which no lease had been given, should be canceled, and that the lien of the certificates of sale should cease and determine. The constitutionality and validity of this legislation has been expressly upheld. Wheeler v. Jackson, 105 N. Y. 681; Id., 137 U. S. 245, 11 Sup. Ct. 76.

This disposes of all the tax sales but three. The first is that of February 21, 1848, to Bernard Sheridan for 500 years, the lease on which was executed to James Keeler, March 5, 1850. This lease was assigned by James Keeler to Bernard Sheridan, who acquired the fee of the premises, and is cut off by the deed from Sheridan's executor. Some question is raised whether the record of the assignment shows that the assignee was James Keeler or Joseph Keeler. The special term inspected the original record, and decided that the entry was to James Keeler. That record is not before us, and we cannot disturb the finding of the trial court. The second is the tax sale of December 4, 1850, to John L. Brower, for 400 years, on which a lease was granted to Bernard Sheridan. It is objected that there is no sufficient proof of the assignment of the tax sale by Brower to Sheridan. If that position is established, and the lease to Sheridan is held unauthorized, then the lien of Brower under the tax sale is cut off by the statute of 1885 for his failure to take out a lease. If, however, the lease to Sheridan was valid, then it is cut off by the conveyance from Sheridan's executor already recited. The third is a tax sale of February 18, 1885, made under the law of 1883 to James Doody, the plaintiff, and Francis Frith, of the fee of the premises. The title acquired under this sale was vested in the plaintiff by a conveyance from Frith to him.

We have thus disposed of all the objections to the plaintiff's title that in our judgment require discussion. We think his title not only good, but that no objection has been raised against it sufficiently doubtful of determination to render the title unmarketable.

The judgment appealed from should be affirmed, with costs. All concur.