MULLINS, Appellant, v. BUTTE HARDWARE CO., Appellant; NICKEL et al., Respondents.

(No. 1,332.)

(Submitted May 13, 1901.  Decided August 1, 1901.)

25  525
26  272
26  273
25  525
31  256
31  257
31  599
32  511

*Mines and Minerals—Surface Rights—Location—Occupancy— Tenants in Common—Partition — Deeds — Registration— Notice — Evidence — Burden of Proof — Bona Fide Purchasers.*

1. Where, prior to the location of a quartz mining claim, the surface was occupied by different persons, who agreed that one should locate for all, and that, after patent issued, conveyances should be made, vesting in each full title to the surface occupied by him, but the conveyances were in fact never made, the agreement and continued occupation after the patent issued did not constitute an oral partition, as the location of such claim confers on the locator the right to the exclusive enjoyment of all the surface ground.

2. Prior to the location of a quartz mining claim the occupants of the surface, had but a naked possessory right, and after the location by one of them for all, under an agreement to convey to each the surface occupied, the right was but an equity to hold such person as trustee, and the agreement and continued occupation could not amount to an oral partition.

3. Tenants in common hold their lands by unity of possession, and each has the right to enter upon, occupy and use the whole or any part of the common property.

4. In so far as persons other than the tenants themselves are concerned, the actual occupancy of one tenant in common is the rightful possession of all the owners, and if a tile under which they might hold is of record and is consistent with the occupancy, the possession must be referred to the record and will not be constructive notice of any other title.

5. The person securing the patent having executed deeds to each of the occupants for an undivided interest in the mine, but not referring to any surface interest as distinguished from the interest in the whole claim, the continued occupation of the separate portions of the surface, with payment of taxes, and the making of improvements thereon, was not inconsistent with the record title, and gave no notice to subsequent purchasers or incumbrancers that the occupant claimed any certain divided interest; and Civil Code, Sec. 502, relating to notice, had no application.

6. If the burden was on subsequent purchasers to show that they purchased interests in a mining claim for a valuable consideration, and without notice of the occupant's equitable unrecorded title to certain surface rights, such burden was discharged by the introduction of the deeds under which the purchasers held, setting forth a valuable consideration.

7. Where a grantee of a mine, with notice of an outstanding equity, conveys to one without notice, and for a valuable consideration, such purchaser is protected.

8. The record title to a mine held by the occupants of the surface was of undivided interests, without reference to any claim for separate and distinct surface right, and C. one of such owners conveyed an undivided in-

terest to M. by deed recorded in 1880. M. conveyed to H. by deed recorded in 1882. H. conveyed to D. by deed recorded in 1889. In 1885 the same owner C. conveyed another undivided interest to N. by a deed purporting also to convey a distinct surface right thereon. Held, that the recorded deeds to M. and H. were sufficient to protect D. and his grantees from a claim that they had notice of the claim to a distinct portion of the surface.

9. The occupancy of the lot by N., as his grantor's lessee, for a year and a half before his purchase, and his continued occupancy, was not notice of the separate claim to surface rights.

10. Even if M. and H. were chargeable with notice of N.'s claim, the title of D. and his grantees was superior.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

PROCEEDINGS by Patrick Mullins against the Butte Hardware Company and C. H. Nickel and others for the partition of a mining claim. From a judgment and from orders denying the motion for a new trial, plaintiff and defendant the Butte Hardware Company appeal. Reversed.

*Mr. L. P. Forestell,* for Plaintiff and Appellant.

*Messrs. McBride & McBride,* for Butte Hardware Company, Defendant and Appellant.

*Mr. G. W. Stapleton, Mr. John W. Cotter,* and *Mr. Charles R. Leonard,* for Respondents.

MR. JUSTICE PIGOTT delivered the opinion of the Court.

Mullins, the plaintiff, and the Butte Hardware Company, a corporation, one of the defendants, have appealed from a judgment and from orders denying motions for a new trial in an action for the partition of the Yellow Jack quartz lode mining claim.

On May 13, 1897, the claim, which is now within the corporate limits of the city of Butte, was located by one Cummings. When the location was made and for some time theretofore, Cummings, one Bowen, one Moss, one Hamilton and perhaps others, were occupying parts of the surface ground, each having

a dwelling house or other visible evidence of possession upon
the part occupied by him.   The principal purpose of making
the location was to obtain title to the surface of the claim in
order thereby to protect the occupants in their holdings and
secure to them in severalty the ownership of the land used by
them respectively.   With this object chiefly in view the occu-
pants agreed among themselves that Cummings should locate
the claim for the benefit of all, that each would contribute his
proportionate share of the expenses incident to procuring title,
and that when patent issued the proper conveyances would be
made, the one to the other, in order to vest in each full title
to the surface ground occupied by him, and also to vest in him
an undivided interest in the minerals in the same proportion
as his surface holding bore to the entire surface.   In compli-
ance with the agreement the claim was located by Cummings.
The receiver's receipt was issued on December 30, 1884, and
recorded December 3, 1887.   On December 21, 1893, the patent
was issued to him and three others (including one Schwab),
who had succeeded to the interests of certain of the occupants.
The patent was duly recorded on January 17, 1894.   The
expenses were paid proportionately by those interested and the
agreement fully performed except as to the making of the deeds
conveying the surface rights in severalty to the respective occu-
pants, Cummings delivering deeds of conveyances whereby the
undivided interests of the respective persons in the mining
claim were transferred to them in the proportions theretofore
agreed upon, and the legal title which Cummings should acquire
by patent was assured to them according to their several undi-
vided equitable interests.   All the deeds were duly recorded,
the last on October 1, 1883.   None of these deeds to the original
occupants described or referred to any surface-ground interest
as distinguished from undivided interests in the whole claim,
nor did it in any way attempt to describe an interest in sever-
alty.   In 1885 Cummings made a deed to the defendant Nickel
which, in addition to an undivided one-sixteenth interest in the
Yellow Jack claim, purports to convey a parcel of land 50 by

243 feet in area which had been occupied by Cummings; but, as will be seen, this is not important in so far as the rights of the appellants are involved.

Intermediate the location of 1879 and the issuance of patent, as well as subsequently, sundry deeds, mortages, and other instruments were executed by the different owners to whom Cummings had, prior to 1884, conveyed undivided interests, in most of which the property conveyed or affected was described as undivided interests in the Yellow Jack lode claim, no reference being made to surface rights as distinguished or as held separate from the mineral interests. During all of this period, extending from a date anterior to the location down to the time when this action was begun, most of the respective occupants of the surface of the claim at the time of its location, and their successors in title, remained in open, visible, and notorious possession of, and paid taxes upon, the parts of the surface originally occupied and which they had agreed to convey after patent so that each might own in severalty. Some of the occupants and their grantees—notably Bowen, McDermott, and Nickel—erected permanent and valuable buildings. After 1885 there were several meetings had for the purpose of carrying out the agreement made among the original occupants of the several parcels of the surface ground, but owing to the nonattendance of one or more of the owners nothing further was ever done. The superintendent of the Butte Hardware Company attended some of these meetings. Mullins is not shown to have had notice or knowledge of the attempts to consummate the original agreement.

In the consideration of these appeals we shall endeavor to confine ourselves to the points made by counsel. We feel justified under the circumstances of the case in the inference that any question not presented by counsel is waived or its solution deemed unnecessary. So viewing the case, the plaintiff's chain of record title may be stated as follows: Deed dated June 7, 1880, by Cummings, the locator, conveying to Moss an undivided one-half interest in the claim; mortgage dated January .

23, 1882, by Moss to one Hauser, conveying the same undivided interest (and purporting to convey also a piece of ground in area 67 by 120 feet) ; sheriff's deed consequent upon sale under foreclosure of the mortgage dated July 10, 1883 ; deed dated November 29, 1889, by Hauser to one Davis, of an undivided half interest, (subject to a prior deed of November 2, 1885, from Hauser to one Raymond purporting to convey the lot just mentioned) ; and deed made in 1895 by Davis to the plaintiff conveying all his interest (thirty undivided sixty-fourths) in the Yellow Jack lode claim.    The record title of the Butte Hardware Company, so far as it is necessary to state it, stands thus: On June 18, 1880, Cummings conveyed to one Schwab an undivided one-fourth interest in the claim; on May 5, 1884, Schwab conveyed an undivided one-eighth interest to the Butte Hardware Company.    The record titles of the respondents, the Bowen heirs, and McDermott, and Fitschen stand thus: Deed by Cummings conveying to Bowen one undivided eighth interest in the Yellow Jack lode claim, made and placed of record October 1, 1883 ; deed by Bowen conveying to McDermott one undivided sixteenth interest in the claim, made November 14 and placed of record November 15, 1883 ; deed by Bowen to Hauser and Fitschen purporting to convey to them an undivided one-eighth interest in the claim, made and recorded December 29, 1884 ; agreement by Hauser, Fitschen, Cummings, and Schwab (grantees named in the patent) with Bowen, to convey to him when patent should be issued an undivided one-eighth interest in the claim, made December 29, 1884, recorded July 11, 1885 ; through *mesne* conveyances the respondents named are clothed with record title to certain undivided interests in the claim.

The title of Moss to an undivided thirty–sixty-fourths interest in the claim having been thus vested in the plaintiff, he brought this action for the partition of the Yellow Jack lode claim, including the entire property conveyed by the patent irrespective of any supposed surface rights other than those incident to, following, and covered by, the title to the claim as

located and patented. The answering defendants, acquiescing in the right of the plaintiff as their co-tenant to a partition of the claim in so far as the minerals therein are concerned, insist, with the exception of the Butte Hardware Company, upon their exclusive ownership in severalty of the parts of the surface occupied by them and their predecessors in title, asserting that the facts made Cummings a trustee for them as to the minerals and as to the surface not actually occupied, constituted an oral partition of the occupied surface ground binding upon all of the original occupants, and created equitable titles as to the surface of which all persons had notice by reason of such occupation. The district court sustained the contention of the defendants, other than the Butte Hardware Company, and held that an oral partition had been made of the surface of the Yellow Jack lode claim, and that the surface ground claimed by the Bowen heirs, by McDermott, and by Nickel and others, had been orally partitioned and set apart to them.

We proceed to the consideration of every point made or suggested by counsel for the respondents:

1. The respondents contend that there was an oral partition of the surface ground among the several occupants, and that this has been shown by the agreement which was made in 1879, followed by the exclusive possession of the occupants and their successors and the payment by each of them of the taxes levied upon the land embraced within his holding, and by subsequent acquiescence on the part of the equitable owners in the supposed agreement for an oral partition. As to acquiescence, suffice it to say that the evidence does not tend to prove that Mullins or the Butte Hardware Company acquiesced in or ratified the former agreement. With respect to the agreement of 1879 and the continued occupancy thereunder of the persons who were then in possession, we are of the opinion that these facts did not constitute an oral partition. The location of a quartz mining claim confers upon the locator the right to the exclusive enjoyment of all the surface ground as well as of all the minerals within the lines of the claim (we are not

considering any question of apex or extralateral rights),—in other words, the location of a mining claim carries with it the right to the exclusive possession of the surface ground within the boundaries of the location. The location is a claim to the exclusive possession of the surface ground as well as to the veins and deposits beneath the surface. (*Talbott* v. *King,* 6 Mont. 76, 9 Pac. 434.) Title to the Yellow Jack quartz lode mining claim embraced, of course, title to the minerals and the surface ground within its exterior boundaries. That title was obtained from the United States government, the initial step having been taken by Cummings when he duly located the claim. In locating it, however, Cummings was unquestionably acting on behalf of himself and others under an agreement which made him a trustee and created a trust enforceable in equity, the validity of which has been too often recognized and adjudicated to permit its serious discussion as a novel or doubtful proposition. As among the original parties to the agreement and as to all persons who have acquired interests with knowledge or notice of the equitable title of the beneficiaries under that agreement, the title of the original occupants and their successors is beyond reasonable controversy, and hence we do not concur in the statement of counsel that the principal issue is whether or not there was an oral partition of the surface of the Yellow Jack lode claim, but rather regard the question of notice as the more important.

If the original occupants of the claim could in equity properly be treated as tenants in common of the entire claim or of its surface, or some part thereof, the question of their rights as among themselves could be easily solved by applying the principle recognized in *Mathes* v. *Nissler,* 17 Montana, 177, 42 Pacific Reporter, 763. But they cannot be so regarded. Between the time of the inception of their occupancy and the time when the claim was located, none of them had any title, or any right except that which attends the naked possessor; after the location by Cummings, their trustee, they acquired equitable rights gauged by the increasing and ripening title

of their trustee; but from the mere germinal stage of Cummings' record title to the day of trial there was never, as among the parties themselves, any joint interest or tenancy in common as to the occupied surface resulting from any of the relations existing among them. Whatever rights they had at any time as to the surface were, as among themselves, in severalty at all times. After the location and prior to the conveyances by Cummings to them, they were, of course, as among themselves, tenants in common of the minerals beneath the surface and of the unoccupied surface, but that common interest was also an equitable one and arose out of and resulted from the same oral trust contract which created their rights in severalty as to the surface of the claim or such parts of it as were covered by the contract between the occupants. If, therefore, they had any equitable interests as to the mining claim before receiving conveyances from Cummings, the actual locator, their rights at that time were because of, and co-extensive with, the trust agreement, and their rights in severalty as to the surface were as well defined and as well founded as were the rights which they similarly and simultaneously were acquiring to the minerals; hence, if the locator of the mining claim represented himself and others and became trustee for all in whose behalf he was acting, and by reason of the relationship and their contribution of the expenses, his associates, though unnamed in the location notice, had equitable rights which he was obliged to recognize and which were enforceable in equity, so that his subsequent transfers to them were not mere gratuities but were in recognition of contract rights and in fulfillment of contract obligations, then, for the same reason which made the transfers of the mineral rights obligatory, these persons were equally entitled to specific and separate estates in severalty in the surface of the claim under and by virtue of the trust agreement which was the sole source of all their rights. Their rights in the mineral interests were not greater than their rights to separate parts of the surface; both rested upon the same equitable foundation, and each was of equal rank with the other,—they were

twin equities, born at the same time, neither having any greater age or legal vitality than the other. Both of these distinct and definite equitable estates were created at the same time, and by the same mutual co-operative agreement, yet all through this litigation they have been discussed and treated as of vitally different degrees of validity, one being unanimously admitted to be a vested right, and the other to be a mere expectancy dependent upon conformity to the technical principles regulating or applicable to the rights of tenants in common, whereas the proof discloses that if any of these persons, other than the locator, ever had interests in the property, it was only by virtue of an agreement which particularly defined those interests to be in severalty in respect of the surface, as plainly and particularly as it defined those interests to be in common with respect to the minerals beneath the surface. The logical conclusion therefore is that, although Cummings and the persons to whom he granted undivided interests became, except as among themselves, tenants in common of the entire claim, no tenancy in common as to the surface of the claim ever existed *inter sese;* and hence all dispute in respect of the sufficiency as among the occupants of a supposed oral partition is necessarily eliminated from the case. Prior to the conveyances by Cummings to them, the original occupants were, in equity, tenants in common of the Yellow Jack lode claim, save as to the parts of the surface occupied by them, and as to these each was in equity the owner of the surface possessed by him. Such, as among themselves, were their relations to the claim.

The second question is whether the persons whose equitable estates in severalty as to parts of the surface were so well founded as among themselves, have preserved those rights in so far as the plaintiff and the Butte Hardware Company are concerned.

2. As among the parties to the agreement of 1879, there were, it is true, two distinct ownerships. There was ownership in the several lots and there was ownership of undivided interests in the minerals underlying the surface. But these owner-

ships were equitable and existed only among the parties to the agreement and as to those who became purchasers or incumbrancers with knowledge or notice of the facts. The respondents contend that the visible, open, notorious, exclusive and continued occupation in severalty by them and their predecessors in interest of parts of the surface ground was constructive notice of their equitable rights and titles. The law is well settled that the actual, visible, notorious, continuous, exclusive and unequivocal possession of "a definite tract of land by one rightfully in possession or holding under a valid title is a constructive notice to subsequent purchasers and incumbrancers of whatever estate or interest in the land is held by the occupant, equivalent in its extent and effects to the notice given by the recording or registration of his title." (2 Pomeroy's Equity Jurisprudence, Sec. 615.) Such possession is evidence of some right or title in the occupant and is sufficient to put a subsequent purchaser or incumbrancer on inquiry as to the rights of the person then in possession. But this general rule is not always applicable. It has its exceptions. One of the exceptions is stated in Section 232 of Webb on Record of Title thus: "Where a person occupies premises, and the record shows a conveyance under which he would be entitled to the possession, in such case his possession will be referred to the record title, and a subsequent purchaser will not be charged by it with notice of any other undisclosed title or equity which the occupant may have. The possession is a matter tending to excite inquiry, but the fact that the occupant has placed upon the public records written evidence of his right, with the terms of which his possession is consistent, arrests inquiry at that point, and reasonably informs the purchaser that he may rest upon the knowledge thus obtained. Thus, a wife was entitled to an interest in land by inheritance. A partition was had with other heirs, but the deed made thereupon was to both husband and wife, vesting the title of her portion in them as tenants in common; and as against lien creditors of the husband her possession was held notice of only an undivided half interest. So, where a mort-

gagee is in possession under a recorded mortgage, a purchaser from the mortgagor will not by such possession be charged with notice of an unrecorded conveyance of the equity of redemption from the mortgagor to the mortgagee, unless by the terms of the recorded instrument the mortgagor was entitled to possession at the time of the last purchase." Mr. Wade, in his treatise on the Law of Notice, says: "Circumstances may arise where one having title to real estate, and being in possession under his title, may nevertheless be prevented from relying upon such possession as notice to subsequent parties. As, for example, where, in addition to the title under which the proprietor occupies the premises, and which either rests in parol or is unrecorded, the record also shows a title under which he would be entitled to possession. In such a case his possession will be referred to his record title in preference to any other, and the purchaser will not be affected with notice of any undisclosed title or interest which the possessor may have. Thus, where a mortgagee is in possession under a recorded mortgage, a purchaser from the mortgagor will not be, by such possession, charged with notice of an unrecorded conveyance of the equity of redemption from the mortgagor to the mortgagee, unless by the terms of the recorded instrument the mortgagor was entitled to possession at the time of the last purchase." (Section 297.) "This exception is obviously just and reasonable. When a party places upon record an instrument, the provisions of which are consistent with his possession of the premises, while the circumstance of his being in possession undoubtedly has a tendency to excite inquiry in the minds of those contemplating a purchase, the fact that he has placed the evidence of his right to occupy upon record, where it is accessible to the whole world, arrests inquiry at that point, and plainly informs the purchaser that he may rest securely upon the knowledge already obtained." (Section 298.) In Section 616 of Pomeroy's Equity Jurisprudence the doctrine is thus stated: "The decisions may be regarded as agreeing upon the conclusion, which also seems to be in perfect harmony with sound principle, that where a title

under which the occupant holds has been put on record, and his possession is consistent with what thus appears of record, it shall not be constructive notice of any additional or different title or interest to a purchaser who has relied upon the record, and has had no actual notice beyond what is thereby disclosed." Among the cases which support this doctrine, and we find none to the contrary, are the following: *Smith* v. *Yule,* 31 California, 180, 89 Am. Dec. 167; *Allday* v. *Whitaker,* 66 Texas, 669, 1 S. W. 794; *Wrede* v. *Cloud,* 52 Iowa, 371, 3 N. W. 400; *Holland* v. *Brown,* 140 New York, 348, 35 N. E. 577; *Rogers* v. *Hussey,* 36 Iowa, 664; *May* v. *Sturdivant,* 75 Iowa, 116, 39 N. W. 221, 9 Am. St. Rep. 463; *Brown* v. *Volkening,* 64 New York, 83; *Griffin* v. *Hall,* 111 Alabama, 601, 20 South. 485; *Plumer* v. *Robertson,* 6 Sergeant & Rawle, 184; *Mc-Mechan* v. *Griffing,* 3 Pickering, 149, 15 Am. Dec. 198; *Kendall* v. *Lawrence,* 22 Pickering, 542; *Bush* v. *Golden,* 17 Connecticut, 594, 602; *Commonwealth* v. *Lakeman,* 4 Cushing, 597; and 16 Am. & Eng. Enc. Law (1st Ed.) 803, and cases there cited. The purchaser is presumed to have relied upon the record. (*Hull* v. *Diehl,* 21 Montana, 71, 76, 52 Pac. 782.)   .

After the conveyances by Cummings, the original occupants and their successors in interest were, according to the title shown by the record, tenants in common of the entire Yellow Jack lode claim. Tenants in common hold their land; by unity of possession, and each has the right to enter upon, occupy and use the whole or any part of the common property. The possession of one is presumed to be for the benefit, and the maintenance of the rights, of all the co-tenants. (*Gunter* v. *Laffan,* 7 Cal. 589; *Brittin* v. *Handy,* 20 Ark. 404, 73 Am. Dec. 497; Freem. Co.-Ten., Secs. 166, 248; *Carpentier* v. *Webster,* 27 Cal. 544.) The occupancy of each was, therefore, consistent with the record title. We observe, in passing, that the provisions of Section 502 of the Civil Code are without pertinency to the question under discussion—that of notice. In so far at least as persons other than the tenants themselves are

concerned, the actual occupancy of one tenant in common is the rightful possession of all the owners, and if a title under which they might hold is of record and is consistent with the occupancy, the possession must be referred to the record and will not be constructive notice of any other title. We cannot concur therefore in the argument of counsel to the effect that the possession by Bowen and his heirs and by McDermott and others of the portions of the surface which had been set apart to them by the agreement of 1879, the making of improvements thereon, the payment of taxes, and the open exercise of rights of exclusive ownership, were notice of the titles, other than those appearing of record, under which they were occupying the property. All that was done was consistent with the rights of tenants in common. The possession was not unequivocal and must be referred to the recorded deeds of conveyance creating or evidencing a right to enter and remain in occupancy of the land. We are of the opinion, therefore, that the occupancy and the making of improvements did not serve to charge the appellants with constructive notice. The suggestion that the records of the county treasurer's office showing that each of several occupants paid taxes on the parcel of ground in his possession were sufficient to put the appellants upon inquiry has already been considered, but may be further answered by saying that such records are not, of themselves, constructive notice to purchasers or incumbrancers of the fact that certain persons have paid taxes. We are not advised of any statute which declares the record of the payment of taxes to have that effect.

. 3. It is contended, however, that the burden of showing that they purchased for a valuable consideration and without notice, rested upon the appellants, and that unless such proof was made the respondents must prevail. Sections 258, 259, and 260 of the Fifth Division of the Compiled Statutes of 1887, provide, in substance, that every conveyance and every instrument setting forth any agreement to convey any real estate shall, from the time it is filed for record, impart notice

to all persons of its contents, and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice; and that every such conveyanace which shall not be recorded shall be deemed void as against any subsequent purchaser in good faith and for a valuable consideration whose own conveyance shall be first recorded. Sections 1640, 1641, and 1644 of the Civil Code declare that every conveyance of real property is, from the time of its filing for record, constructive notice of the contents thereof to subsequent purchasers and mortgagees; that it is void as against any subsequent purchaser or incumbrancer in good faith and for a valuable consideration whose conveyance is first recorded, and that an unrecorded instrument is valid as between the parties and those who have notice thereof.

Oral agreements affecting the title to real property, being incapable of record, are certainly not within the express language of these sections. They are, however, within those equitable principles under which the rights of innocent purchasers are enforced as against secret equities, whether arising from an oral contract or an uncertified instrument, neither of which is susceptible of record, or from an instrument certified but not recorded; and while such equities are not within the very words of the registry act, they are within its plain purpose and spirit, law and equity going hand in hand. Manifestly, "so far as the object of requiring registration is to protect purchasers in good faith, and give simplicity and certainty to the title to real estate, it must be frustrated whenever secret trusts or equities, whether arising by deed or without it, are allowed to prevail against conveyances duly recorded." (2 Leading Cases in Equity, p. 139.) The right created by a prior unrecorded instrument, even though it purports to convey and does transfer, as between the parties to it, the legal title, should, as to purchasers without notice, be regarded "as tantamount to an equitable interest, which may, therefore, be cut off by a subsequent purchaser or incumbrancer who is in all respects *bona fide,* and who has also obtained the first record" (2 Pom-

eroy's Equity Jurisprudence, Sec. 758), when the statute requires prior recordation. There is no reason why equities not arising by a written instrument should occupy a better position and be more tenderly regarded than equitable interests which rest upon writings.

In the case at bar each appellant claims title to an undivided interest in the land by a deed of conveyance purporting to have been made for a valuable consideration. In *Hull* v. *Diehl,* 21 Montana, 71, 52 Pacific Reporter, 782, the purchaser of the later though first recorded mortgages proved that he paid a valuable consideration, but there was no other evidence tending to establish that he was without knowledge or actual notice of the prior mortgage. In that case the court said: "Whether the burden of proving the payment of a valuable consideration is upon the person claiming under a conveyance recorded before the record of a prior conveyance is not presented for decision in this case, and we express no opinion. We are, however, satisfied that the good faith of the purchaser will sufficiently appear by proof of the record of conveyances showing title in his grantor at the time of the purchase, upon which record he had the right to rely, and is presumed to have relied. If he had actual notice of the prior conveyance, this is a fact affirmative in its nature, and it is therefore more reasonable to require it to be shown by the party claiming under the prior unrecorded deed than to call upon the purchaser to prove the negative." Nor is it necessary in the present case to determine whether the burden of proving the payment of a valuable consideration is cast by the law upon the subsequent purchaser holding under a deed first recorded, for, as we have stated, the deeds to the appellants recited the payment of valuable considerations, and the doctrine is clearly established upon principle and by the weight of authority "that one claiming title to land by a deed to him purporting to be made for a valuable consideration is presumed to be a purchaser in good faith, without notice of prior unrecorded deeds, until the contrary is shown; and that the burden of proof to show notice and want of good faith is

on the party attacking the deed." (*Anthony* v. *Wheeler,* 130 Ill. 128, 22 N. E. 494, 17 Am. St. Rep. 288, note.) The respondents sought to establish rights to the Yellow Jack lode claim in hostility to the title of record; they were therefore bound to prove notice to the holders of the titles of record of the facts upon which their supposed rights were founded. If the burden devolved upon the appellants to show that they paid value, the burden was *prima facie* discharged when the recorded deeds under which they held were introduced. In addition to those already referred to, we select the following cases as supporting the doctrine that the recital in the deed raises a rebuttable presumption of the payment of a valuable consideration, and that the burden of proof to show notice of the earlier-made instrument not first recorded or of the oral contract, rests upon the party claiming rights under the latter: *Hiller* v. *Jones,* 66 Mississippi, 636, 6 South. 465; *Wood* v. *Chapin,* 13 New York, 509, 67 Am. Dec. 62; *Ryder* v. *Rush,* 102 Illinois, 338; *Hoyt* v. *Jones,* 31 Wisconsin, 389; *Smith* v. *Yule, supra; Bush* v. *Golden, supra; Roll* v. *Rea,* 50 New Jersey Law, 264, 12 Atl. 905; *Brown v. Volkening, supra; Hendy* v. *Smith* (Sup.), 2 New York Supplement, 535; *Beman* v. *Douglas* (Sup.), 37 New York Supplement, 859; *Doody* v. *Hollwedel* (Sup.), 48 New York Supplement, 93; *Holland* v. *Brown, supra;* and *Gratz* v. *Land & River Improvement Co.,* 82 Federal Reporter, 387, 27 C. C. A. 305, 53 U. S. App. 499, 40 L. R. A. 393. The principle governing the decision in *Thamling* v. *Duffy,* 14 Montana, 567, 37 Pac. 363, 43 Am. St. Rep. 658, is inapplicable.

4.    It is next contended that the Butte Hardware Company, through its superintendent, had either knowledge or actual notice of the agreement of 1879 and hence was not a purchaser in good faith. The company received its deed to an undivided one-eighth interest on May 5, 1884, and the deed was recorded on the same day. The evidence tends to show that the superintendent had actual notice of the equitable rights of the occupants after 1885, but does not tend to show that he had it prior thereto; so there is nothing to indicate that the company (as-

suming that notice to the superintendent was notitce to it) had actual notice until after it purchased. True, Schwab, its immediate grantor to whom Cummings had conveyed and who is named in the patent as a grantee, had actual notice at the time he acquired his interest in the claim; but if one who has notice of an outstanding equity conveys, mediately or immediately, to a purchaser without notice who pays a valuable consideration, such purchaser is entitled to protection. This is an ancient and established doctrine in chancery courts. The rule prevails also under the recording statutes; and the company having literally complied therewith, perfected its title as against the outstanding unrecorded equities.

5.    It is also suggested that both Mullins and the company were charged with constructive notice of Nickel's rights by the record of his deed which conveyed an undivided interest in the whole claim and purported to convey also a lot thereon. This deed was made on March 16, 1885, and was recorded on June 16, 1885. As to the company the record of the deed could not be constructive notice, for its deed from Schwab was delivered and recorded in 1884. Nor was it constructive notice to Mullins. Cummings conveyed an undivided interest to Moss, and the deed therefor was made and placed of record in 1880; Moss conveyed to Hauser by deed made and recorded in 1882; Hauser conveyed to Davis by deed made in 1889 and recorded in 1890; and Davis conveyed to Mullins by recorded deed dated in 1895. Although the deeds from Hauser to Davis and Davis to Mullins were executed after the record of the deed from Cummings to Nickel, the deed of Cummings to Moss and the deed of Moss to Hauser were duly recorded in 1880 and 1882, respectively; and long before the deed from Cummings to Nickel was made. In so far as constructive notice is concerned, the recordation of the deeds from Cummings to Moss and Moss to Hauser was sufficient to afford protection to Mullins as against Nickel's subsequently recorded deed from Cummings, despite the fact that the *mesne* conveyances under which Mullins asserts title were made and recorded after the conveyance by

Cummings to Nickel had been recorded. The deed from Cummings to Moss, as well as the deed from Moss to Hauser, is Mullins' conveyance within the meaning of the statute, and it was duly recorded before Cummings conveyed to Nickel. The statute was satisfied. There is much conflict upon this question, but we are satisfied with the rule announced in *Hull* v. *Diehl, supra,* and in *Hooker* v. *Pierce,* 2 Hill, 650. Nor does it seem that the deed to Nickel is in the chain of Mullins' title.

6. The further suggestion is made that the appellants were charged with constructive notice of Nickel's rights by his possession of the parcel of ground described in this deed from Cummings. We think not. When the lode claim was located, Cummings was occupying the lot. Cummings conveyed to Nickel on March 16, 1885. The evidence shows that when the deed was made, Nickel was living on the lot and had been "there about a year before" as lessee of Cummings. This falls far short of being sufficient evidence to warrant the inference that Nickel was in possession at the time Schwab conveyed to the company or that he was occupying otherwise than as a mere tenant, and there is nothing to show that he was in possession under a contract of sale from the person who had theretofore by recorded deeds conveyed to the grantor of the company, and to others, undivided interests in the land whereon is situate the lot to which Nickel asserts title. Nor was Mullins charged with constructive notice of Nickel's occupancy. Undivided interests were conveyed by Cummings to Moss and by Moss to Hauser, and the deeds therefor were recorded long before Nickel went into possession. True, Nickel was in possession under his deed from Cummings when Hauser conveyed to Davis and when Davis conveyed to Mullins; but the evidence fails to show that Nickel had any right or interest in the property either when Cummings conveyed to Moss or Moss to Hauser. But even if Nickel, as between himself and Cummings and as to Moss, had a prior right to or interest in the land, Mullins' title is the better. A., the holder of the legal title of record, conveys or contracts to convey land in his possession to X.; A. then

conveys the same land to B. (a purchaser with notice), who puts his deed on record; B. conveys to C., who puts his deed on record; X. then puts his contract or deed on record and for the first time enters into possession; while X. is so the possessor, C. conveys to D. who purchases for a valuable consideration and without notice of the rights of X., unless notice be charged by his possession or recorded deed. Is either the recorded deed to X. or his possession constructive notice to D.? We think not. While the possession of X. at the time C. conveyed to D. would charge D. with constructive notice, equivalent in effect to the record of a deed from C. to X., of whatever estate or interest X. had under or from C. (the record owner), yet neither the recorded deed from A. (whose title of record had passed to C.) to X. nor the occupancy by X. could be constructive notice to D. of any title or right of X. as against A. or B. So far as D. is concerned, X. has no title, legal or equitable, and therefore no rights of which constructive notice could be given.

The orders and the judgment appealed from are reversed and the cause is remanded with direction to grant a new trial.

*Reversed and remanded.*