SOLOMON ANDREWS, Appellee, v. MARGARET M. MEREDITH and J. C. MEREDITH, Appellants.

**Boundaries:** ACQUIESCENCE: RESURVEY: ESTOPPEL. Where adjoining land owners for over twenty years treat a division fence as marking the line between their land it will ordinarily be held to constitute the true boundary, and the mere agreement to have a survey made, without binding either party to accept the same, will not overthrow such acquiescence or estop either of the parties from claiming the line found by the surveyor as erroneous.

*Appeal from Keokuk District Court.—* HON. B. W. PRESTON, Judge.

TUESDAY, OCTOBER 23, 1906.

CONTROVERSY over boundary line resulted in a decree against defendants as prayed, and from it they appeal.— *Affirmed.*

*Brown & Willcockson,* for appellee.

*Talley & Hamilton* and *Stockman & Hamilton,* for appellants.

LADD, J.— Plaintiff owns the north ½ of the northeast ¼ of section 22, township 74 north, of range 11, and the defendant, M. Margaret Meredith, owns the south ½ of the same quarter section. A rail fence has marked the division between these tracts, save three or four rods on the west end, for thirty-eight years. There was a small patch of land covered with brush in the southwest corner of plaintiff's farm, and another in the northwest corner of the eighty now belonging to defendant, between which there was no partition fence until about twenty years ago. The brush was then removed by De Armond, the owner of defendant's land at that time, and a wire fence constructed from the end of the rail fence on to the west line. Since then the owners have occupied and cultivated the respective tracts, save possibly the two or three acres formerly in brush, up to the division fence, which they have treated as the boundary. Having done so for twenty years, the fence is to be regarded as marking the true boundary between the respective farms, unless this conclusion is obviated by other circumstances shown on the trial. *Miller v. Mills County,* 111 Iowa, 654; *O'Callagan v. Whisenand,* 119 Iowa, 566.

In April, 1903, defendant J. C. Meredith claims to have spoken to plaintiff about having their farms surveyed, and that plaintiff, in connection with Captain Baker, whose land joined defendant's on the west, agreed to join in meeting the expenses of such survey, and authorized Meredith to employ a surveyor. This was done, and E. B. Kerr, the

718          ANDREWS v. MEREDITH.          [131 Iowa

county surveyor, undertook the ·work. His measurements indicated that the true line is about fifteen feet north of the fence at one end and twenty feet at the other. The plaintiff was present when the surveying was done and expressed his dissatisfaction. Each of the parties paid one-third of the cost. There is testimony to the effect that subsequently plaintiff, after talking with De Armond, stated that he had become satisfied with the survey. Later Meredith offered to pay him $31 for a narrow strip of land on the west end of plaintiff's farm to enable the former to go to other land belonging to his wife; that plaintiff said "If I deed that strip to you, how about moving the fence?" To which Meredith replied, "You need not worry about that; if I live we will not move the fence until late in the fall so as to get the fence in before the ground freezes up." Thereupon plaintiff conveyed the strip, though he accepted· but $30 in payment. Plaintiff denied entering into the arrangement for the survey, claiming that it was his son instead, and denied making the statement attributed to him.

For the purposes of this case the version of Meredith may be accepted. It will be observed that the division line between the parties was not mentioned, nor was there any agreement by which either was bound to accept the survey as fixing the true line between them. Under these circumstances, it cannot be said that having a survey made was sufficient to overthrow an acquiescence of more than twenty years, nor to estop plaintiff from insisting that the line fixed by the surveyor was erroneous. It was merely an arrangement to have measurements made and the lines run, but, in the absence of some understanding to· that effect, neither party was bound to accept the results of such survey. Nor is either estopped from insisting that the boundary line was another than that indicated by the survey. No expense was incurred on the understanding that the new line would be accepted; and hence there was no prejudice upon which an estoppel might be based. If the plaintiff, after the survey

was made, expressed his satisfaction, which he denies, the defendants were fully advised, before incurring any expense by constructing the fence on the line indicated by the surveyor, that he would not accept such line, and that if they proceeded with the fence he would enjoin them from so doing. The case is clearly to be distinguished from *Kitchen v. Chantland,* 130 Iowa, 618. There the defendant agreed that the fence was not on the true line and plaintiff made improvements according to the line of the survey in reliance thereon and each had agreed it should constitute the boundary between them. Here no discussion occurred prior to the survey as to what lines should be run or located. Nor did the plaintiff indicate a doubt as to the old fence marking the boundary until long after the survey had been made, and then he changed his position before the defendants had incurred any expense whatever in reliance on the accuracy of the survey by Kerr. Appellant also relies upon what occurred in connection with the purchase of the strip of land. This had relation to the removal of the fence, and, if Meredith is to be believed, plaintiff exacted a promise that this would not be done until late in the season. Surely, such an understanding as it is not inconsistent therewith would not preclude plaintiff from insisting that the fence should not be moved at all for the reason that it was now on the true boundary.

The decision of the trial court was right, and the decree is *affirmed.*