TEBAY LAND & LIVESTOCK CO., RESPONDENT, v.
HASTIE, APPELLANT.

(No. 4,901.)

(Submitted September 28, 1922.   Decided November 4, 1922.)

[210 Pac. 605.]

*Ejectment — Boundaries — Ownership — Title — Evidence —
Admissibility.*

Ejectment—Ownership—Title—Oral Evidence—Sufficiency.
   1.   While ordinarily ownership of real property must be proven by
title deeds and the public records, and not by the bare assertion
of title, yet where, in an action in ejectment, plaintiff was per-
mitted without objection to testify that he was the owner and
entitled to the possession of the premises in controversy and there
was no testimony in any manner tending to rebut such testimony,
it was at least *prima facie* proof of ownership.

Same—Evidence—Witnesses—Use of Pronoun "I" When Speaking of
Corporation.
   2.   The effect of the positive statement of the president of plain-
tiff corporation on his direct examination that it was the owner of
real property in controversy in an action in ejectment was not mini-
mized by his subsequent testimony on cross-examination that "I am
the owner," it being apparent that by the use of the pronoun "I"
he did not wish to be understood as speaking for himself but meant
the corporation.

Same — Boundaries — Corner   Markings — Evidence   of   Engineer   and
Others—Admissibility.
   3.   In an action in ejectment in which the location of the bound-
ary line between adjacent lands was in dispute, evidence by a
graduated   civil   engineer   that   he   found   corner   markings   corre-
sponding to the federal government markings, and evidence of
others who had been acquainted with the lands for many years
testifying substantially to the same state of facts was admissible
for the purpose of establishing the boundaries.

Same—Certified Copy of Field-notes—Admissibility in Evidence.
   4.   A certified copy of the original field-notes of the survey of a
section of land in dispute in an action in ejectment, from the
office of the United States surveyor-general, was competent for
the purpose of identification of the corner markings.

Same—Nonexpert Witness—Measurements—Inadmissibility of Evidence.
   5.   The testimony of a witness who had carried a surveyor's chain
when a survey was made for the purpose of locating the corners
of a tract of land, who had not been shown to have any knowl-
edge of surveying or to have made any notes or measurements,
and in the absence of any evidence as to the ability of the sur-
veyor whom he assisted, was inadmissible for want of proper
foundation.

Same—Party Bound by Testimony of His Witness.
>  6.  Where defendant called as her own witness a surveyor who
>  had previously testified for plaintiff, and his evidence given in her
>  behalf emphasized and made more clear the testimony previously.
>  given on behalf of plaintiff, she was bound by his evidence.

*Appeal from District Court, Jefferson County; Jos. C. Smith,
Judge.*

ACTION by the Tebay Land & Livestock Company against
Mary Jane Hastie. Judgment for plaintiff, and from an order
denying a motion for new trial, defendant appeals. Affirmed.

*Mr. Leslie B. Sulgrove,* for Appellant, submitted a brief
and argued the cause orally.

If a judgment undertakes to determine a title, evidence
must show a legal title. (*Lantz* v. *Cole,* 172 Cal. 245, 156
Pac. 45.) Nowhere in the pleadings or evidence was it ad-
mitted that the plaintiff was the owner of, or entitled to the
possession of, any land whatever, and it thus became necessary
for the plaintiff to establish the allegation that the Tebay
Land and Livestock Company, a corporation, was the owner,
as an independent issue. This issue must be determined by
the strength of the plaintiffs' title and not upon the weakness
of that of the defendant. (*Herbert* v. *King,* 1 Mont. 475;
*McKinstry* v. *Clark,* 4 Mont. 370, 1 Pac. 759; *City of Helena*
v. *Albertose,* 8 Mont. 499, 20 Pac. 817; *Borgeson* v. *Tubb,* 54
Mont. 557, 172 Pac. 326; *Little Sesple Cons. Oil Co.* v. *Baciga-
lupi,* 167 Cal. 381, 139 Pac. 802.)

There is nothing to show what character of title the plaintiff
had; he did not attempt to show paper nor record title, nor
any chain of title from the government. The unanimity with
which the courts have excluded oral evidence of title or the
conclusions of witnesses as to the ownership of title of real
property is almost conclusive of the inability of such testimony
to establish any such issue and its lack of probative value, if
admitted. (*Bleckley* v. *White,* 98 Ga. 594, 25 S. E. 592;
*Strickland* v. *Angier,* 99 Ga. 272, 25 S. E. 632; 22 C. J. 635;

*Diefendorf* v. *Thomas,* 37 App. Div. 49, 55 N. Y. Supp. 699.)
The sufficiency of the title to property is a question of law and
not a fact to be proven by opinion. (*Evans* v. *Gerry,* 174
Ill. 595, 51 N. E. 615; *Bostwick* v. *Mahoney,* 73 Cal. 238, 14
Pac. 832.)

Possession must be actual *bona fide* prior possession and
control of such character that the presumption of title will
follow, and the same must be anterior in date to the possession
of the defendant though defendant's possession be tortious.
(*Stevens* v. *Quirk,* 60 Cal. 161; *Polack* v. *McGrath,* 32 Cal. 15;
*Baker* v. *Duff,* 136 App. Div. 13, 120 N. Y. Supp. 184; *Smith*
v. *Steiner & Lobman,* 172 Ala. 79, 55 South. 606; 19 C. J.
1084.) And this it has failed to show.

*Mr. J. E. Kelly,* for Respondent, submitted a brief and
argued the cause orally.

Fred Tebay was permitted to testify, without objection,
that the Tebay Land and Livestock Company was the owner
of the land in question. There are authorities to the effect
that ownership of real estate cannot be proven by statements
of witnesses, since they are considered by some courts to be
opinions and not statements of facts. However, there is suffi-
cient authority that they are evidence and a statement of fact.
(22 C. J., p. 534, citing *De Wolfe* v. *Williams,* 69 N. Y. 621;
*Parmele Co.* v. *Haas,* 171 N. Y. 579, 64 N. E. 440.) Though
there is some conflict of authority as to the admission of such
evidence when the proper objections are made at the proper
time, yet some states hold that a witness may always testify
as to the ownership of real property, it being such an opinion
or conclusion which is admissible. (See 1 Elliott on Evidence,
sec. 673, p. 792, and discussion between opinions, conclusions
and facts in numerous cases therein cited.) Mr. Elliott, in
the same section, states: "It is sufficient if he prove a title good
as against the defendant"; citing *Carson* v. *Dundas,* 39 Neb.
503, 58 N. W. 141; *Lantry* v. *Wolff,* 49 Neb. 374, 68 N. W.
494. Again, in section 2040, volume 3, page 526: "It is not

necessary, however, in order to entitle the plaintiff to recover in every case, that he be required to prove a perfect title. It is sufficient when he has made such proof as will entitle him to recover if no other testimony is offered." Then in the same section he discusses the different methods by which a *prima facie* case may be made out. He does not discuss a case like this one; however, there being no testimony given to rebut the statement of the witnesses for the plaintiff on ownership, any court would surely hold that such testimony makes out a *prima facie* case.

MR. JUSTICE FARR delivered the opinion of the court.

The complaint states a cause of action in ejectment for the recovery of the possession of a tract of land in Jefferson county, Montana, described by metes and bounds, being that portion of the southeast quarter of the southwest quarter of section 10, township 1 north, range 4 east of the Montana meridian, lying west of the Jefferson River.

Upon issue joined, the case was tried before the court with a jury, and at the conclusion of the evidence the court directed a verdict for the plaintiff, upon which judgment was entered for the plaintiff and against the defendant. Defendant moved for a new trial, which motion was denied, and this appeal is from the order denying the motion.

The real question in controversy was as to the location of the dividing line between the southeast quarter of the southwest quarter of section 10 of this township and range claimed by the plaintiff, and the southwest quarter of the southwest quarter of that section claimed by the defendant, this depending on the location of certain section corner and quarter corner markings on the south side of section 10 as established by the United States government survey. The location and ownership of a slaughter-house, a hoghouse, and certain pens and inclosures used in connection with these buildings was the cause of the controversy, the plaintiff contending that these were located on that portion of the southeast quarter of the

southwest quarter of section 10 lying west of the river belonging to him, and defendant contending that they were located on her land, the southwest quarter of the southwest quarter of said section.

The specifications of error relied on present but two questions: (1) Whether the evidence was sufficient to establish the plaintiff's title to the land which it alleged to own; and (2) whether the court properly directed a verdict for the plaintiff.

1. Defendant questions the sufficiency of the evidence to [1] establish plaintiff's title to the land which it alleged ownership of, because the only evidence of proof of ownershnp was the oral testimony of Fred Tebay, vice-president and treasurer of the Tebay Land & Livestock Company, the plaintiff corporation. Tebay testified, without objection, that "at the time of the beginning of this suit the Tebay Land & Livestock Company was the owner of and entitled to the possession of the land in question. The Tebay Land & Livestock Company has been the owner at all times since the filing of this complaint and entitled to the possession thereof. Since on or about March 17, 1917, the Tebay Land & Livestock Company has been the owner of and entitled to the possession of that land in question."

There was not any testimony in any manner tending to rebut this. Defendant now contends that this evidence was insufficient to prove ownership in the plaintiff, and relies upon the well-settled rule that the burden of proof in a case of this kind is on the plaintiff to prove ownership, and that the plaintiff must recover on the strength of its own title, and not on the weakness of that of its adversary. This rule is elementary, but the rule does not require proof that is either unnecessary or absurd. The proof required on the part of the plaintiff in a case of this kind is frequently modified by the nature of the defendant's right or claim, and plaintiff is often not required to prove a perfect title. It is frequently sufficient if he has made such proof as will entitle him to recover if no further testimony be offered. (Elliott on Evidence, secs.

2040, 2041, and cases there cited.) Tebay testified in plaintiff's behalf, without objection, to the ultimate fact to be proven, that the ownership of the land was in the plaintiff corporation. After so testifying in chief the witness was cross-examined, and on cross-examination he testified to the manner in which the plaintiff acquired title to the property. The case was tried upon the theory that the only question in dispute was the location of the boundary line between the southeast quarter of the southwest quarter and the southwest quarter of the southwest quarter. Defendant made no claim of title in herself to the southeast quarter of the southwest quarter, nor did she claim that any person other than the plaintiff was the owner. She did claim that the slaughter-house and pens were owned by her, but this claim of ownership was based upon her belief that they were situated upon the southwest quarter of the southwest quarter of that section instead of the southeast quarter of the southwest quarter. In view of all this we think that Tebay's evidence was at least *prima facie* proof of ownership. (*Westfield Cigar Co.* v. *Cheshire County Mut. Fire Ins. Co.*, 169 Mass. 382, 47 N. E. 1026; *Sparks* v. *Galena Nat. Bank*, 68 Kan. 148, 74 Pac. 619; *Minnesota Debenture Co.* v. *Johnson*, 96 Minn. 91, 104 N. W. 1149, 107 N. W. 740.) If timely objection had been made to this testimony given by Fred Tebay, it should have been excluded, for it is true that ownership of real property is ordinarily to be proven by the title deeds and the public records, and not by [2]    the bare assertion of the fact itself. And the fact that on cross-examination the witness Tebay, in referring to the ownership of the land, used the pronoun "I," does not detract from the value of his testimony. As, for instance, the witness said on cross-examination: "I know I am the owner of the land by having a deed for it. * * * " He had previously testified that the Tebay Land & Livestock Company was the owner, and it is quite apparent from all of his testimony that he used the personal pronoun "I" in referring to the ownership of the land in the same manner as the term is frequently

employed by such an officer of a corporation as was the plaintiff in referring to the company's property. The testimony thus given on cross-examination in no manner minimized the effect of his positive statements made on direct.

2. The next and last question is as to the action of the court [3] in directing a verdict for the plaintiff. A review of all the evidence given would serve no useful purpose. The effect of plaintiff's evidence was that the boundary line between these two quarters was such as to conform to the description given by metes and bounds in the complaint, and to show that the slaughter-house and fences were on that portion of the southeast quarter of the southwest quarter lying between the west boundary line of that quarter and the Jefferson River. The district court, in our opinion, properly so found and directed a verdict for the plaintiff.

In support of this conclusion there was evidence of one C. D. Flaherty, a graduate civil engineer of fifteen years' experience, who had made a survey for the purpose of locating the quarter corners involved. He found corner markings corresponding to the federal government section and quarter-section corner markings. The survey and the measurements made and the location of the quarter corners by him were shown to have all been done in conformity with the rules and regulations prescribed by the surveyor-general of the general land office. Other witnesses who had been acquainted with this particular section and with the adjoining lands for a period of many years stated that they knew certain of the corners in dispute which corresponded with the corners used by Surveyor Flaherty in making his survey. One of these witnesses testified to the location of the southwest corner of section 10 and to a corner post there which had been recognized as such for a period of between thirty and thirty-five years. There was evidence by apparently disinterested witnesses of declarations by the deceased owner of adjoining land, made, while pointing out the corners and the boundaries, and who apparently from the fact of such ownership had knowledge of

the corners and the boundaries, or at least he was in such a position as to have enabled him to acquire such knowledge. There was also evidence tending to show that the charred post which was testified to as being at the southwest corner of this section was generally recognized as being at the government section corner. All of this evidence was admissible for the purpose of establishing the section and quarter-section corners and the dividing lines between the quarters involved. (*Thoen* v. *Roche,* 57 Minn. 135, 47 Am. St. Rep. 600, 58 N. W. 686; *Andrews* v. *Meredith,* 131 Iowa, 716, 109 N. W. 287; Wigmore on Evidence, secs. 1563–1571, and sec. 1587, and cases there cited.)

In addition to this testimony a certified copy of the original [4] field-notes of the survey of this section 10 from the office of the United States surveyor-general was put in evidence. These notes showed the kind and nature of the markings made at the time of the original survey of the quarter corners of this section, and these markings in general agree with the markings found by the civil engineer and were competent for the purpose of such identifications. (*Peterson* v. *Skjelvar,* 43 Neb. 663, 62 N. W. 43; *Ayers* v. *Watson,* 137 U. S. 584, 34 L. Ed. 803, 11 Sup. Ct. Rep. 201 [see, also, Rose's U. S. Notes].) This evidence on the part of the plaintiff was, in our opinion about as full and complete as could well be made in the identification of old and partially obliterated corners for the purpose of establishing boundaries.

The only testimony offered by the defendant in rebuttal of [5] this was that of Charles Dickinson, who testified that he carried a surveyor's chain in 1915 for a Mr. Crowley, who, he says, was a surveyor, when Crowley made a survey for the purpose of locating these corners, and he attempted to give testimony as to the method followed by Crowley in making such survey and of the results, the measurements, distances, *etc.* This testimony was objected to for want of a foundation and that it was not the best evidence, which objections were sustained. It was not shown that the witness himself made

any notes of the measurements, that he had any knowledge of surveying land, or that he did anything more than to carry the end of the chain used in measuring. There was not a word as to Crowley's ability as a surveyor, that he knew how to survey land, or that the measurements or the survey that were made by him at that time were at all correct. The evidence offered and given was clearly inadmissible for want of a proper foundation. This witness also testified that he assisted a surveyor by the name of Baker, but just what he or Baker did does not appear. While this witness was testifying relative to his assisting Baker, a colloquy took place between the opposing counsel as to why Baker was not present as a witness, from which it appeared that Baker was in a near-by town ready and expecting to be called as a witness. Defendant's counsel gave as an excuse for not having Baker present that his client was too poor to pay the expense, at which point the plaintiff offered to bring the witness and have him in court to testify the next morning, all of which was agreed to, the court remarking, "That would be a very happy solution." No further reference was made to Baker. He was not called by either party, and the reason for not calling him pursuant to the tentative understanding reached is not disclosed.

The defendant called as her own witness the surveyor [6] Flaherty, who had previously testified on the part of the plaintiff, and his evidence given in her behalf emphasized and made more clear the testimony previously given on behalf of plaintiff. By making Flaherty her own witness, the defendant was clearly bound by his evidence.

The conclusion reached by the trial court is the only one that can be drawn from all this evidence by any fair and impartial mind. The court properly directed the jury to find for the plaintiff.

The order appealed from is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.