MARY JULIA KEELER HENSLEY, Plaintiff and Respondent, v. MONROE STEVENS and Donna Stevens, his Wife, Defendants and Appellants.

No. 11899.
Decided March 3, 1971.
481 P.2d 694.

Tipp, Hoven & Brault, Missoula, Vernon Hoven, argued, Missoula, for appellants.

Turnage & McNeil, Polson, Charles B. McNeil, argued, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

From a judgment for the plaintiff, Mary Hensley, cancelling a deed on grounds of fraud, undue influence, and breach of trust, the defendants, pastor Monroe Stevens and his wife Donna Stevens, appeal.

Plaintiff, who is of Indian extraction, owned approximately twelve acres of real property on Flathead Lake, but lived in Antioch, California. In 1958, defendant became pastor of the Pentecostal Holiness Church in Antioch, which was located directly across the street from plaintiff's home. Defendant pastor frequently visited and prayed for plaintiff and her husband who were plagued by drinking problems and very unhappy. As a result of the unhappy and confusing conditions of her domestic life, plaintiff turned to the defendant and a very strong relationship of pastor and worshipper developed.

Prior to September 1967, plaintiff gave defendant financial aid for a broadcasting station for defendant's use in his ministry and other incidental expenses in that regard. When plaintiff became sufficiently involved in her crusading fervor with defendant, she suggested defendant make a missionary trip to Viet Nam, but defendant stated he would prefer a trip to South America. Plaintiff alleges that after several conversations about the proposed trip, defendant specifically promised to include plaintiff as a member of the missionary party on the South American trip. Defendant denied this promise in his testimony before the district court. In anticipation, plaintiff bought a round-trip air ticket for defendant to South America.

On September 22, 1967, plaintiff executed a grant deed to the defendants of a parcel of land situated on Flathead Lake to be used for projects in defendant's ministry. The transaction was made in the law offices of Michael Huffaker an attorney of Antioch, California, who was employed by defendants to prepare the deed. Plaintiff was not represented by counsel although Huffaker did explain the legal effect of such a transaction to plaintiff. The transaction was completed upon the parol condition that defendants would reconvey a portion of the property to plaintiff's husband. This reconveyance never occurred.

Following the transfer of the land, defendant ceased visits to plaintiff's home and became totally disinterested with plaintiff. Early in March 1968, plaintiff confronted defendant and asked

when they were going on the missionary trip to South America. Defendant said plaintiff was not going on any trip with him to South America or anywhere else, whereupon plaintiff demanded defendant deed the property back to her. Defendant refused to retransfer the land, so plaintiff instituted this action.

The trial court heard testimony by both defendant pastor and plaintiff which was in conflict in certain instances, and had the depositions of four others who were familiar with the circumstances.

The issues presented on this appeal are as follows:

1. Is plaintiff bound by the testimony of the defendant pastor who was not identified as an adverse witness when called as a witness in plaintiff's case in chief?

2. Did defendant pastor make false representations to plaintiff for the purpose of inducing the conveyance of the property and did plaintiff rely on them?

3. Was an irrevocable inter vivos gift established?

4. Did defendant pastor exercise undue influence over plaintiff by virtue of a fiduciary relationship?

5. Was an involuntary trust created by defendant pastor for the benefit of plaintiff?

In disposition of the first issue, it has been the rule for decades in this state that a party who calls a witness to the stand to testify and does not identify him as an adverse witness is bound by the testimony of that witness. Tebay Land & Livestock Co. v. Hastie, 64 Mont. 509, 517, 210 P. 605. However, where the testimony of witnesses conflicts, as in the present case between plaintiff and defendant pastor, a court may weigh the testimony of both witnesses together with all the other evidence in the case to determine which testimony is the most credible. If the evidence tends to lend credence to the plaintiff's case, the court cannot nonsuit the plaintiff and must take full consideration of the case on its merits. McCollum v. O'Neill, 128 Mont. 584, 590, 281 P.2d 493.

This Court also finds the evidence in the record substan-

tial enough for a court to properly consider the case on its merits. This Court has stated in former decisions and in Johnson v. St. Patrick's Hospital, 152 Mont. 300, 307, 448 P.2d 729, 732:

"It is a basic rule of law, so basic that it hardly requires citation of authority, that where a fact issue or issues are presented before either a court sitting alone, or with a jury, and there is substantial evidence to support the findings of the court of the jury verdict, such findings or verdict are conclusive on appeal. It is only where there is an absence of creditable testimony introduced below to support the result that this Court is justified in reversing for failure of proof."

The second issue resolves itself on the same grounds as the first. The totality of the evidence is sufficient to demonstrate false representations by defendant and reliance thereon by the plaintiff, especially when consideration is given to defendant's promise to reconvey a portion of the property to plaintiff, a promise that was never carried out. Thus, the district court was not in error in reaching a conclusion of law which holds the defendant to have made false representations to the plaintiff.

With the above conclusions in mind, the answers to issues three, four, and ultimately five, can be resolved by the presence of "badges of fraud". In Humbird et al v. Arnet et al., 9 9Mont. 499, 512, 44 P.2d 756, 761, this Court said:

"They [badges of fraud] are said to be facts which throw suspicion on a transaction, and which call for an explanation. It has been said that they are inferences drawn by experience from the customary conduct of mankind, and that they afford grounds of influence from which the court or jury are authorized to conclude that a transaction surrounded by them is fraudulent. More simply stated, they are the signs or marks of fraud. They do not of themselves or *per se* constitute fraud, but they are facts having a tendency to show the existence of fraud, although their value as evidence is relative and not

absolute. They are not usually conclusive proof; they are open to explanation. They may be almost conclusive, or they may furnish merely a reasonable inference of fraud, according to the weight to which they may be entitled from their intrinsic character and the special circumstances attending the case. Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent.''

The ''badges of fraud'' in the present case consist of the strong relationship of pastor and worshipper by defendant with plaintiff who was afflicted with an alcoholic problem and an unhappy home life. This relationship led to undue influence by defendant over plaintiff as manifest by plaintiff's extensive financial support given to the defendant for his ministry and the purchase of a round-trip air ticket for defendant's trip to South America. Then, too, the land was to be used for projects in defendant's ministry but the deed prepared by the defendant's lawyer granted the property to the defendant and his wife personally, not to his church. In addition, defendant's unfulfilled promise to reconvey a portion of the property is also evidence of fraud. These uncontroverted elements taken together fully support the district court's decision that the transaction was the product of undue influence and false representations by the defendant thereby annulling plaintiff's gift of the property on the basis of fraud.

With regard to the creation of an involuntary trust, section 86-210, R.C.M.1947, is controlling:

''One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.''

Thus, defendant by gaining plaintiff's property by fraud must

492

be found to be an involuntary trustee in accordance with the statute, thereby creating an involuntary trust by his misdeeds.

Judgment affirmed.

MR. JUSTICES HASWELL, JOHN C. HARRISON, DALY and CASTLES concur.