KENCK ET AL., APPELLANTS, *v.* DEEGAN ET AL., RESPONDENTS.

(No. 3,035.)

(Submitted March 13, 1912.   Decided March 21, 1912.)

[122 Pac. 746.]

*Water Rights—Appropriators—Proof of Privity With—Failure—Effect—Findings—Conclusiveness.*

Water Rights—Appropriators—Proof of Privity With—Failure—Effect.
   1.   In order to make good his claim to a water right as of the date at which it was initiated by another, it is incumbent upon the possessor to show some contractual relation between himself and the original appropriator, or privity with him under the laws of succession; otherwise the initiation of the right will be fixed as of the date at which the possessor went into occupancy.

Same—Findings—Conclusiveness.
   2.   A finding in a water right suit, based upon conflicting evidence, is conclusive.

*Appeal from District Court, Broadwater County; J. B. Poindexter, a Judge of the Fifth Judicial District, presiding.*

ACTION by C. J. Kenck and another against Ross E. Deegan, guardian of Valentine Staubach, an incompetent person, and others.   From the judgment and an order denying them a new trial, plaintiffs appeal.   Affirmed.

*Mr. O. W. McConnell* submitted a brief in behalf of Appellants, and argued the cause orally.

*Messrs. Walsh & Nolan,* for Respondent Deegan, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to quiet title in plaintiffs to the use of the water flowing in Staubach creek in Broadwater county. They claim by separate rights. Plaintiff Kenck alleges an appropriation and diversion of 140 inches by predecessors in interest, in the early spring of the year 1866, for the purpose of irrigating 160 acres of land in section 35 of township 9 north, range 1 west, and continuous use by his predecessors and himself, down to the bringing of this action. A second claim is predicated upon an appropriation of 100 inches which is alleged to have been made in May, 1893. Plaintiff Gravel alleges an appropriation and diversion of 100 inches, by a predecessor in the spring of 1866, to irrigate 160 acres of land in section 36, adjoining the land of Kenck and like continuous use by his predecessors and himself, down to the bringing of this action. It is alleged that the defendants, claiming some right to the use of water from the stream, are diverting it therefrom and depriving the plaintiffs of its use, to their irreparable damage, though such rights as the defendants have are subsequent and inferior to the rights of plaintiffs. The complaint concludes with a prayer for a decree determining the respective rights of plaintiffs and defendants and fixing their priorities and amounts.

The defendants Reynolds, Kerchlechner, and Moody suffered default to be entered against them and were not awarded any rights. The defendant Deegan, controverting plaintiffs' rights, alleges that his ward, Valentine Staubach, now an incompetent, in the spring of 1866 appropriated and diverted from the stream 160 inches for use upon agricultural land then owned by Staubach, in section 2 of township 9 north, range 1 west, and that ever since the date of appropriation, when the flow of the stream has been sufficient, the amount so appropriated has been used by Staubach and the defendant, his guardian, upon this and other land belonging to Staubach in sections 2, 34, and 35, all of it being of such character as to need irrigation. It is alleged that other appropriations were made by Staubach in the years 1871

and 1877. These rights and the second right claimed by plaintiff Kenck are not involved on these appeals. As to the other rights, the court found that on March 31, 1867, Staubach appropriated and diverted forty inches for use upon a portion of the land now belonging to him in section 2, and that since that date he and his guardian have needed and used this amount; that the predecessors of Kenck on May 1, 1869, appropriated and diverted fifty inches for use upon the land now owned by Kenck in section 35, and that since that time his predecessors and he have made continuous use of this amount; and that the predecessor of Gravel on the same day appropriated and diverted fifty inches for use upon the land now owned by him in section 36, and that his various predecessors and he have made continuous use of this amount. The decree fixes the amounts and priorities in accordance with these findings. The plaintiffs have appealed from the decree and an order denying their motion for a new trial. The contention is that the evidence is insufficient to justify the findings as to the date and amount of plaintiffs' appropriations, and also that the award to defendant is excessive.

The evidence is voluminous, covering more than 500 printed pages of the record. Owing to the omission by plaintiffs to have certified up to this court, as a part of the record, the maps introduced at the trial to illustrate the testimony of the witnesses, it is impossible to gain a clear understanding of the situation of the lands of the respective parties with reference to Staubach creek, or the location of their ditches. Moreover, most of the persons who were in the vicinity and had personal knowledge of the situation as it was in 1866 and during the years immediately following are now dead. Those of them who were still living at the time of the trial and who testified were evidently affected by failure of memory, due either to advancing years or to lapse of time. Still others were at the time of the events about which they testified too young to observe intelligently, and hence did not have more than a vague and indefinite recollection of the situation. Taken altogether, the evidence is not clear and satisfactory. But, so far as it relates to the dates of the original

appropriations, it is clear and involves no controversy. It presents rather a question as to what is the rule of law which must be applied to the admitted facts.   .

Two men, referred to by the witnesses as Doc Mann and Joe Barber, settled on the Kenck land in 1866 and made an appropriation of water as early as May of that year. One Northrop settled on the Gravel land about the same time and, by an agreement with Mann and Barber, extended the ditch constructed by them to his land to irrigate a portion of it. Thereafter, during the continuance of the occupation by these parties, all used the ditch in common. Other persons occupied these lands during 1867 and 1868 and used a small amount of water. In the spring of 1869 possession of both settlements was taken by one John W. Rodgers; subsequently a homestead patent was secured by him to the 160 acres in section 35, now owned by Kenck, and by proper conveyances Kenck is vested with his title and the appurtenant rights. At a date not shown, patent to the Gravel land was secured by one Wm. F. Hamilton. Gravel is now vested with the Hamilton title, with appurtenances. When, however, we come to connect the Rodgers possession in 1869 with that of the prior occupants, either by written or oral conveyances, we are unable to find any; nor are we able to find any connection between the Hamilton title and that of Rodgers or his predecessors. So far as can be ascertained from the evidence in this connection, Rodgers went into possession as a volunteer without having acquired the rights of those who preceded him, either by virtue of the law of succession or by conveyances. Staubach made his settlement in October, 1866. His appropriation was made in the spring of 1867, as early as some time during the month of March. He and his guardian have been in possession ever since, Staubach having secured patent first to a pre-emption claim of 160 acres in section 2, and later to other land under homestead and desert entries in sections 2, 34, and 35. Under this condition of the evidence the court correctly found and fixed the date of the latter appropriation as of the time it was made in 1867. And though the appropriations of Mann and Barber and of Northrop

antedated the inception of this right by a year, the plaintiffs having failed to put themselves in privity with them, the court properly fixed the date of the inception of plaintiffs' rights as of May 31, 1869, the earliest date at which Rodgers, the predecessor under whom they both claim, is shown to have been in possession.

While there is no presumption that any predecessor of Rodgers abandoned the Mann-Barber right or that of Northrop, the absence of this presumption cannot supply the proof of privity with these rights through Rodgers, which the law requires the plaintiffs to show in order to establish their claims of succession to them. The mere possession by one person of a water right originated by another does not show such privity. In order to [1] make good his claim to the right as of the date at which it was initiated, the possessor must show some contractual relation between himself and the original appropriator, or privity with him under the laws of succession. Otherwise the initiation of the right will be fixed as of the date at which possession was taken. (*Hays* v. *Buzard,* 31 Mont. 74, 77 Pac. 423; *Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222; Farnham on Waters, sec. 670a.) The author cited states the rule thus: ''The question whether or not one in possession of a water right at a given time, which was originated by another, has sufficient title thereto to enable him to protect and defend it depends upon whether or not he is in privity with the original owner. The rights of an owner of land claiming water as appurtenant thereto do not relate back to the inception of the alleged right in the appropriation made by the original settler of such land, where there is no proof of any contractual relation between his predecessor in title and such original settler, either directly or indirectly touching the settler's rights, and it is not apparent that his predecessor ever acquired such rights from such settler.''

Some contention is made that the plaintiffs have established their right to priority by adverse use. In our opinion this issue is not properly made by the pleadings. But, even so, the evidence is in conflict both upon the question of continuous, [2]

uninterrupted use by the plaintiffs, or either of them, and upon the question whether the use by them and their predecessors, following the assumption of possession by Rodgers, has not always been subordinated to, and in recognition of, the Staubach right. Under this condition of the evidence, we are concluded by the findings of the district court.

The same must be said of the findings of the amounts allotted to each of the parties. The evidence tends to show that in the earlier months of the season Staubach creek furnishes water sufficient to supply the wants of all the parties, but at the average low-water season, in July and August, it furnishes not to exceed 100 inches at most. In finding upon this branch of the case the court was evidently influenced somewhat by the notion that while the defendant is entitled to the oldest right, the amount awarded to him should not be so fixed as to give him a monopoly during the extreme low-water season. In any event, the allowance made to each of the parties is well within the extreme limits fixed by the conflicting evidence as to their respective necessities. Under this condition of the evidence we cannot disregard the findings as made.

The judgment and order of the district court are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.