COLLINS, RESPONDENT, v. THODE, APPELLANT.

(No. 3,857.)

(Submitted January 10, 1918. Decided February 2, 1918.)

[170 Pac. 940.]

*Real Property — Ejectment — Adverse Possession—Evidence— Insufficiency.*

Ejectment—*Prima Facie* Case—Sufficiency.
　　1.　In an action seeking recovery of possession of realty claimed by defendant under title by adverse possession, evidence that plaintiff became the owner at a certain time and continued as such in possession, supplemented by the legal presumption that a thing once proved to exist continues as long as is usual with things of that nature, was sufficient, in the absence of proof to the contrary, to make a *prima facie* case in behalf of plaintiff.

Same—Adverse Possession—Essentials.
　　2.　Possession of realty, to be adverse, must be actual, visible, exclusive, hostile and continued during the time necessary to create a bar under the statute of limitations.

　　[As to what is essential to adverse possession, see notes in 28 Am. St. Rep. 158; 88 Am. St. Rep. 701.]

Same.
　　3.　Where the adverse claimant never asserted to anyone any claim

to the land in question and never told the owner of it, the possession must have been of such a character as to give the owner notice of the hostile claim, else it is not "adverse."

Same—Evidence—Insufficiency.

4.  Evidence disclosing *inter alia* that the alleged adverse possession claimed by defendant had its inception in the possession of her son who had moved his house upon the land and with whom she lived, but who never himself asserted any claim to the premises, made neither answer nor testified in the action, *held* insufficient to show that she ever had such possession as could ripen into title.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION for possession of real estate by Lovinia A. Collins against Mary J. Thode.  Judgment for plaintiff, and the named defendant appeals.  Affirmed.

Cause submitted on briefs of counsel.

*Mr. Stephen J. Cowley,* for Appellant.

The court invaded the province of the jury in directing what its verdict should be in this case.  The question as to whether or not defendant had acquired title to the premises in controversy by adverse possession was one for the jury solely. (*Bannes* v. *Light,* 116 N. Y. 34, 22 N. E. 441; *Harrison* v. *Spencer,* 90 Mich. 586, 51 N. W. 642; *Murray* v. *Romine,* 60 Neb. 94, 82 N. W. 318; *Illinois Steel Co.* v. *Jeka,* 123 Wis. 419, 101 N. W. 399.)  It is not the notoriety of claim of title by one in adverse possession that the statute contemplates, but rather the notorious occupation of the premises.  (*Carter* v. *Clark,* 92 Me. 225, 42 Atl. 398; *Barnes* v. *Light,* 116 N. Y. 34, 22 N. E. 441; *Seymour* v. *Over River School Dist.* (Conn.), 4 Atl. 246.)  The same matter was disposed of by the Minnesota supreme court in the case of *Kelly* v. *Palmer,* 91 Minn. 133, 97 N. W. 578. The action was one in ejectment in which counsel for plaintiff requested the court to charge the jury that: "In order to recover, the defendant must bring home notice to the true owner." The trial court declined to give the requested instruction and his refusal was sustained.

If one enters upon the property of another and commences filling in the low places thereon, or making improvements, he thereby indicates to the true owner, if the latter pays reasonable attention to his property, a hostile purpose to adversely appropriate such premises, and he thereby effectually plants thereon the standard of a hostile invader. (*Illinois Steel Co.* v. *Jeka, supra.*) The intent to claim by adverse possession may be inferred from the matter of the occupancy. (*Dean* v. *Goddard,* 55 Minn. 290, 56 N. W. 1060.)

· *Messrs. Cooper, Stephenson & Hoover,* for Respondent.

Since title to the premises is undoubtedly in the plaintiff, she was entitled to the relief asked for in the complaint unless defendant introduced sufficient evidence to establish her claim of ownership by adverse possession. The case was rested by defendant upon her own testimony, and it is our contention that she did not introduce sufficient evidence to make it possible for the jury to find in her favor upon the issue of adverse possession.

The burden is placed upon the defendant to show that she held the property adversely to plaintiff's legal title for a period of ten years before the commencement of the action. (1 Cyc. 1143–1145.)

It is a presumption of law and of evidence that the possession of a member of the family, whether father, child, husband or wife, is the same as, or in subordination to, that of the head of the family. In the case of *Hoyt* v. *Zumwalt,* 149 Cal. 381, 86 Pac. 600, the court says: "If Isaiah Zumwalt gave his son the money to pay for the land upon the sole condition that he should be provided with a home there, his subsequent residence on the premises as a member of the family did not constitute possession, and certainly there was nothing to give it the character of an exclusive or adverse possession." Where husband and wife live together, it is a presumption of law that the wife's possession is subordinate to and under the right and title of the husband. (See, also, *Frink* v. *Alsip,* 49 Cal. 103; *First Nat.*

*Bank* v. *Guerra,* 61 Cal. 113; *Gafford* v. *Strauss,* 89 Ala. 283, 18 Am. St. Rep. 111, 7 South. 248; *Bannon* v. *Brandon,* 34 Pa. 263, 75 Am. Dec. 655; *Mitchell* v. *Murphy,* 43 Fed. 427.) The mother's possession was not such as to charge persons dealing with the property with a knowledge of her claims, whether real or fancied. (*Rankin* v. *Coar,* 46 N. J. Eq. 566, 11 L. R. A. 661, 22 Atl. 177; *Atlanta Nat. Building & Loan Assn.* v. *Gilmer,* 128 Fed. 295; note to *Garbutt* v. *Mayo,* 13 L. R. A. (n. s.) subd. i, 131.)

Under certain circumstances such as those set forth in the many cases referred to in appellant's brief, mere possession and use of property is sufficient to give notice to the owner that his rights are invaded. But where her possession was entirely consistent with the claim of her son and was of such a nature that any prudent person would consider that she was merely living with her son as a member of his family, the burden devolved upon her to make her claim in a positive and unequivocal manner. (*Potts* v. *Coleman,* 67 Ala. 221; *Mauldin* v. *Cox,* 67 Cal. 387, 392, 7 Pac. 804; *Allen* v. *Allen,* 58 Wis. 202, 16 N. W. 610, 614.)

HONORABLE C. C. HURLEY, Judge of the Seventh Judicial District, sitting in place of the Chief Justice, delivered the opinion of the court.

In this action the plaintiff seeks to recover the possession of lot 3 in block 359 of the town site of Great Falls, which lot plaintiff alleges the defendants possess and are wrongfully withholding from her.

The defendant Mary J. Thode answered, and denied each and every allegation in plaintiff's complaint, and alleged as an affirmative defense that she has been in possession of the north 110 feet of said lot since April, 1902; that she has held the same openly, actually, notoriously, continuously, exclusively, adversely and uninterruptedly for that time, and has continuously used said premises as a home, residing thereon, and cultivated and improved the same; and that she claims the same as

her own, adversely and hostile to the claim of the plaintiff or
any person or persons whomsoever.   Upon the trial of the case
it was stipulated in open court that the title to the lot in ques-
tion was in the Great Falls Townsite Company until August,
1902, and was transferred to the plaintiff on the nineteenth day
of August, 1902.   The plaintiff then rested, and the defendant
moved for a nonsuit, which was overruled.

The defendant Mary J. Thode then testified that she is a
sister of the plaintiff; that she has occupied the north 110 feet
of the lot in question since 1902, and has resided thereon con-
tinuously and exclusively, and has never shared the same with
anyone else; that she has maintained her home thereon since
April, 1902, and intends to continue; that she learned in 1902
that either the plaintiff or her husband owned the lot; that
plaintiff's husband owed the defendant money and would not
pay it, and she determined to go on the lot in question for the
purpose of holding possession of it against everybody, includ-
ing Mr. and Mrs. Collins, and live on the lot for the purpose
of getting title by adverse possession; that she had been advised
at that time that she could obtain title by adverse possession;
that she did not have anybody's consent or permission to go on
the lot; that since April, 1902, she has cultivated and improved
the lot, by cutting the grass on the front and on the side, grown
vegetables in the back of the lot, kept a hotbed, driveway and
clothesline, and a house and barn upon the lot in question; that
she cultivated the full 110 feet of such lot each and every year,
except that portion upon which the house was located; that she
raked up and burned the rubbish off of the full 110 feet of said
lot twice a year; that the house has been upon the lot in ques-
tion since 1902, and the barn was moved upon the same two
years later; that the front part of the said lot was never fenced,
but the other three sides were fenced, sometimes with one strand
of wire and sometimes with two; that her possession of the land
in question has not been interrupted since 1902; that her pos-
session has been open and aboveboard, and has never been ques-
tioned until this action was instituted; that she did not know

whether the lot in question was owned by Mr. or Mrs. Collins until after Mr. Collins' death; that she thought Mr. Collins would give her the north 110 feet of the lot before he died, for the reason that he owed her some money; that she always believed that he would either deed the lot to her, or will it to her, and was disappointed when he did not; that she never told anyone of her claim to the lot; that she has lived upon the lot with her son, who is forty years old; that previous to moving upon the lot she and her son resided in a house located upon other land, which house had been built by her son; that she had no income of her own, and her son provides the means for supplying the house; that the house was moved upon the land in question by a person employed and paid by her son; that she has never paid any taxes upon the land or the house in question, and if there were any taxes paid upon the house they were paid by her son; that the barn which was moved upon the premises belonged to her son; that she never "opened her head" to plaintiff, or gave her any intimation that she intended to claim the lot; that she had no talk with her about it, and never let the plaintiff know that she intended to claim the lot; that she did not know why she did not tell her about it; that she did not happen to say anything about it—"Why should I say anything to her?" that she never gave plaintiff any reason to suppose defendant intended to claim the lot, in any talk; that she never gave the plaintiff any reason to suspect that she had a secret intention to obtain the lot; that neither she nor her son ever paid any taxes on the lot; that she did not know who built the sidewalk in front of the lot, or who paid for it; that she never gave herself any concern about that.

The defendant Mary J. Thode was the only witness who testified in this case. At the conclusion of her testimony the court directed a verdict for the plaintiff, and judgment was entered accordingly. This appeal is from that judgment.

Two questions are presented for determination, *viz.:*

(1) Did the court err in overruling defendant's motion for a nonsuit?

(2) Was the evidence offered by the defendant sufficient to show *prima facie* that the defendant had possession of the ground in question under such circumstances as would give her title by adverse possession?

1. It is admitted that the plaintiff obtained title to the [1] ground in question on August 19, 1902. Section 6435, Revised Codes, provides: "In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof, within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for ten years before the commencement of the action." The law also presumes that a thing, once proved to exist, continues as long as is usual with things of that nature. (Subd. 32, sec. 7962, Rev. Codes.) Under this admission and these presumptions of law the evidence was sufficient to justify, in the absence of proof to the contrary, that the plaintiff became the owner and possessed of the ground in question on August 19, 1902, and continued as such owner and in such possession. This would be sufficient to make a *prima facie* case in behalf of the plaintiff. There was no error in overruling defendant's motion for nonsuit.

2. "Adverse possession, generally speaking, is a possession of another's land, which, when accompanied by certain acts and circumstances, will vest title in the possessor. No matter in what jurisdiction the determination of what constitutes adverse [2] possession may arise, the decisions and text-books are unanimous in declaring that the possession must be actual, visible, exclusive, hostile and continued during the time necessary to create a bar under the statute of limitations." (2 Corpus Juris, 50.) It is also held by the great weight of authority that title by adverse possession cannot be acquired unless the possession is open and notorious, or such as to give the owner of the property either actual knowledge of the hostile claim,

or of such a character as to raise a presumption of notice, or so patent that the owner could not be deceived.

In 2 Corpus Juris, 75, it is said: "It is in general true that title by adverse possession cannot be acquired, unless the possession is open and notorious, but the rule must be understood with some qualification. A more correct statement of the rule is: In order to make good a claim of title by adverse holding, the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with a purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault. 'The claimant must exercise such acts of ownership and occupancy as are sufficient to "hoist his flag" over the lands, so that all may observe it.' A clandestine entry or possession will not set the statute in motion, and mere declarations as to title in himself by the claimant, where the possession is not visible or actual, amount to nothing. The owner will not be condemned to lose his land because he has failed to sue for its recovery, when he had no notice that it was held or claimed adversely."

Hostile possession is defined in 2 Corpus Juris, p. 122, as follows: "The term 'hostile' is used in the sense that the claimant must be in possession as owner, in contradistinction to holding in recognition of or in subordination to the true owner. Every possession is adverse which is not in subservience to the title of another, either by a direct acknowledgment or by an open or tacit disavowal of right on the part of the occupant, and it is in the latter case only that the law adjudges the possession of one to the benefit of another. The term 'hostile,' 'when applied to the possession of an occupant of real estate holding adversely, is not to be construed as showing ill will, or that [the claimant] is an enemy of the person holding the legal title, but means an occupant who holds, and is in possession, as owner, and therefore against all other claimants of the land.' "

Under these rules, is the evidence offered by the defendant sufficient to show *prima facie* that she had acquired the land in question by adverse possession? We think not.

The defendant admits that she never asserted to anyone [3] any adverse claim to the land, and particularly that she never told the owner of her claim. Under these circumstances it is necessary that her possession should be of such a character as to give the owner notice of her hostile claim to the land in question. (*Rude* v. *Marshall*, 54 Mont. 27, 166 Pac. 298.)

When the defendant's son had his house moved upon the [4] land, if it was done without any authority from the owner thereof, that circumstance would be sufficient to show his intention to challenge the right of the owner to that land; but there is nothing in this circumstance from which the plaintiff or anyone else could infer an intention on the part of any other person to assert any claim to the premises. If Henry E. Thode, after moving upon the premises in question, as detailed by the defendant, had employed a servant who occupied the house with him, or had permitted some friend or acquaintance to reside therein and live upon the provisions supplied by him, there would be nothing from either of these circumstances from which it could be inferred that anyone other than Henry E. Thode was asserting any claim to the premises. As we view the matter, the defendant's claim does not present as strong a case as either of these examples. The defendant is the mother of Henry E. Thode. He is under both legal and moral obligation to render her support. It is natural for a son to support and care for his mother, and the fact that the defendant occupied her son's house with him would raise no presumption, other than that he was doing his duty as a son. It seems clear to us that the possession of the premises in question at its inception was the possession of Henry E. Thode. That possession is disclosed by the testimony of the defendant. If it was had without authority of the owner of the premises, that would have been sufficient to vest title in Henry E. Thode, by adverse possession; but he has made no answer in this action, and did not

testify. Nowhere is it claimed that he ever asserted any adverse claim to the premises. Let us assume, for the sake of argument, that Henry E. Thode, at the time he moved his house upon these premises, did so under some express authority from the owner thereof, and continued to occupy the same pursuant to such authority. Under these circumstances he could never acquire any right to the premises by adverse possession, and the owner of the premises would be under no obligation to make any inquiry as to the rights or claims of anyone else who might occupy the premises with him; and it will be presumed that anyone else who so occupied the premises did so either at the invitation or sufferance of Henry E. Thode. In the absence of proof it cannot be presumed that he went wrongfully upon the premises in question, but it will be presumed that he occupied the same under authority of the owner. Under these circumstances he could never acquire title by adverse possession, and those who occupied the premises with him could never acquire any greater right to the same than he.

In this case, the rights of the answering defendant can be such only as would accrue if Henry E. Thode occupied the premises in question under authority of the owner. If she occupied the premises pursuant to permission of Henry E. Thode, such possession would be equivalent to permission from the owner of the premises, and subservient to the owner's rights, and she could never acquire any right under such possession, greater than the rights of Henry E. Thode. Such possession could not be hostile to that of the owner of the premises.

In our opinion, the evidence offered by the defendant fails absolutely to show that she ever at any time had such possession of the premises in question as could ripen into title.

We find no error in this case. The judgment is affirmed.

*Affirmed.*

Mr. Justice Sanner and Mr. Justice Holloway concur.