FERGUSON, Respondent, *v.* STANDLEY, Appellant.

(No. 6,741.)

(Submitted April 8, 1931. Decided April 27, 1931.)

[300 Pac. 245.]

Mr. *George H. Stanton,* for Appellant, submitted an original and a reply brief and argued the cause orally.

Messrs. *Freeman, Thelen & Freeman,* for Respondent, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, P. A. Standley, has appealed from a judgment perpetually enjoining him from interfering with the use and occupation by the plaintiff, Gordon L. Ferguson, of a private roadway and telephone line from the latter's premises over and across his lands.

The complaint on which the injunction is based sets up two causes of action. As to the first cause of action it is alleged that since 1896 plaintiff has been the owner and in

possession of lands described, and from that date until April, 1929, John Ferguson owned an adjoining ranch which on the latter date he sold to the defendant. It is then alleged that in August, 1905, for a valuable consideration, John Ferguson granted to plaintiff a "permanent" right-of-way for a road, twenty feet in width, across certain lands for the purpose of ingress and egress to and from plaintiff's ranch, and thereupon plaintiff constructed, and ever since has used continuously, a road along the right-of-way. It is further alleged that defendant has lived in the vicinity for more than eleven years and during all of that time knew that plaintiff claimed, and used under a claim of right, the right-of-way, which is plaintiff's only feasible route from his ranch to market, to the schoolhouse and to church, but that, upon securing possession of the premises on purchase from John Ferguson, defendant closed the road and excluded plaintiff from its use.

The second cause of action is based upon an alleged grant, by John Ferguson to plaintiff, of a right-of-way approximately along the road described, for a private telephone line and the construction thereof, with the allegation that defendant has excluded plaintiff from the right to go upon the land for the purpose of repairing and maintaining the telephone line.

By answer the defendant admits the existence of the road and the ownership of the lands as alleged and that he did close the road, but denies plaintiff's right thereto. As to the telephone line, defendant admits all of the allegations of the complaint, except that he denies that he has in any manner interfered with plaintiff in the use thereof and concedes to him the right to go upon the lands for the purpose of maintaining and repairing it at all reasonable times when necessary to do so.

A preliminary hearing was had and a temporary injunction issued, and, by stipulation, the evidence adduced, including an affidavit made by John Ferguson, was received in evidence on the final hearing, supplemented by further testimony on behalf of both plaintiff and defendant. On the final hearing it was conceded that the alleged grant of the right-of-way rested in parol, and the testimony with reference thereto was conflicting

and unsatisfactory in many of its details, while certain of plaintiff's declarations appear to be disputed by facts suggested in the record.

With the record in this condition the court discarded the theory of a valid grant, and determined the matter in favor of plaintiff on the theory of an easement acquired by prescription, initiated by a void parol grant. No question is raised as to the sufficiency of the pleadings to uphold this theory, and we will, therefore, determine the questions presented on the theory adopted by the court. (*Scott* v. *Jardine Gold Mining & M. Co.*, 79 Mont. 485, 257 Pac. 406.)

Within due time after the cause was submitted, the court made and filed its findings of fact to the following effect: That, following the contour of a coulee, a road existed over and across the lands of plaintiff and his brother John at the time they settled thereon and was used continuously up to the time of the controversy herein. Some work was done on the road prior to 1905, which was subsequent to the time both Fergusons had proved up on their homesteads and at which time John, then road supervisor, was working on the road with a roadgrader and with the help of a third person, when Gordon appeared and "in the conversation then and there had by the two brothers about the road, it was definitely understood and agreed between them that each should have the use of and the right to the continued use of the coulee road over the lands of the other without limit." That "John had no thought of closing the road, * * * ; it was regarded and accepted by him that the road was and ever would be a permanent roadway for himself, his brother Gordon and anyone else * * * who desired to use it."

The court found that, while there existed a "rarely used trail" from plaintiff's home to the county road, this trail "goes up a long steep grade or hill which cannot be made reasonably usable without extensive work thereon on the part of the plaintiff, and which would be extremely burdensome, if not prohibitive, in cost to him," and that the "coulee road" is the "only reasonably available and practicable one for him to use in reaching the county road from his home." That these

facts were known to John Ferguson and that, by the conversation had in 1905, he intended "to relieve Gordon of any uncertainty or apprehension as to his further and future right to the unmolested use of the road," and thereafter did further work which "was a virtual dedication of the roadway for road purposes insofar, as he, the owner of the land, was concerned."

"From this time on, and for nearly twenty-four years, the plaintiff had had the open, continuous, unmolested and uninterrupted use and enjoyment of, and the right to such use and enjoyment of this coulee road. It was intended by John Ferguson that this right to such use by Gordon Ferguson should be a permanent one, regardless of other road changes, * * * and by virtue of said agreement and intention the plaintiff has held and used this coulee road without hindrance these many years."

Upon these findings, and others to which reference will later be made, the court drew its conclusions of law as follows:

(a) "That the open, visible, continuous, unmolested, uninterrupted, acquiesced in and known use of this coulee road by the plaintiff" for more than twenty years "under a claim of right thereto in accord with the verbal agreement" is presumed to have been under a claim of right and in law is "deemed adverse to John Ferguson and his late grantee, the defendant."

(b) "That the burden rested upon the defendant to show that, * * * this use * * * was by permission only, a mere license subject to revocation, and not an easement. This burden the defendant failed to sustain."

(c) "That the defendant had personal knowledge and notice that the lands of John Ferguson were burdened with the open, visible, well-defined, clearly marked road and permanent telephone line and their use, * * * and the purchase was made subject to such burdens * * * ."

(d) That the use of the road as described, under claim of right, "ripened into a clear easement for right-of-way by prescription," and that injunction issue permanently prohibiting, defendant from barring plaintiff from the use of the road or

going upon defendant's land for the purpose of maintaining and repairing the telephone line. Judgment followed.

The judgment is the usual permanent injunction, perpetually enjoining and restraining the defendant, his servants, agents and employees from wiring, nailing or padlocking the gates across the roadway or otherwise obstructing or barring plaintiff from the use thereof. The road is particularly described and it is declared "the same being a strip of land twenty (20) feet wide." As to the telephone line the judgment perpetually enjoins interference with the repairing and maintenance thereof.

1. The allegations of the complaint respecting the telephone line being admitted, there can be no question as to the correctness of the judgment as to it. As to the easement for the road defendant first attacks the findings as not supported by the evidence.

2. Counsel for plaintiff contend that this attack must be disregarded, as defendant did not request findings nor file exceptions to the findings as made, citing sections 9369 and 9370, Revised Codes 1921, and numerous opinions of this court discussing their effect and announcing the doctrine of implied findings.

The sections cited deal with absence of findings and defective findings—omissions—while defendant attacks the findings for what they declare; in such case the rules announced in the cited provisions and cases have no application (*Cobban* v. *Hecklen*, 27 Mont. 245, 70 Pac. 805), and, on matters on which the court has made direct findings there is no room for the application of the doctrine of implied findings (*Crosby* v. *Robbins*, 56 Mont. 179, 182 Pac. 122). The specifications of error properly raise the question of the sufficiency of the evidence to support the findings.

3. On consideration of the evidence we are faced with the rule, too familiar to require the citation of authorities, that the findings of fact by a trial court based on conflicting evidence will not be disturbed on appeal. Nevertheless, this being an equity case, it is our duty to determine from the record whether or not the evidence preponderates against the

decision of the trial court (*Giebler* v. *Giebler*, 69 Mont. 347, 222 Pac. 436; *Laundreville* v. *Mero*, 86 Mont. 43, 69 A. L. R. 416, 281 Pac. 749) and, in doing so, must take cognizance of conflicts and contradictions in plaintiff's own testimony, "as it cannot be unfair to this plaintiff to deal with his case from the standpoint of his own statements" and "he is not entitled to recover * * * unless that portion of his testimony which is least favorable to his contention is of such a character as to authorize a recovery in his behalf." (*Putnam* v. *Putnam*, 86 Mont. 135, 282 Pac. 855.)

A fair *résumé* of plaintiff's direct testimony is that, originally, he made a pre-emption filing on lands in Castner Coulee in 1890 and within three years, to avoid paying $1.25 per acre to secure title, changed his filing to a homestead entry, at which time his brother John also made a homestead entry; that John Ferguson desiring one forty-acre tract included in the pre-emption filing, he relinquished this forty to John in writing, in consideration of John's agreement that he, Gordon, "should always have a way through to the county road," although there was nothing definite as to the right-of-way, it being understood "that sometime we would adjust it." In 1905, changes having been made in the coulee road, plaintiff, with John and another, graded the road and it was then definitely agreed that Gordon should always have the use of that road as his connection with the county road; that he thereafter did work on the road and, up to the time defendant closed the road, always claimed a permanent right-of-way and right to its use and used it openly, continuously and adversely.

On cross-examination, evidence was tendered to impeach plaintiff's declaration as to the consideration for the oral grant, he being questioned concerning the contents of "a writing from the U. S. Land Office at Great Falls certified by the Register," from which it would seem that the plaintiff's pre-emption filing was made in 1889 and the homestead entry of both brothers in 1896, so that plaintiff would have had nothing to "relinquish" at the time John made his homestead entry, the land having reverted to the government. The "writing" was not admitted in evidence, but even though it be held that

plaintiff changed his testimony after reading the "writing," the difference in dates, as hereinafter shown, would not alone be sufficient to defeat plaintiff's right to a recovery.

Defendant asserts that plaintiff is bound by the testimony of ▮ his witness, John Ferguson (*Tebay Land & L. Co.* v. *Hastie,* 64 Mont. 509, 210 Pac. 605; *Sommerville* v. *Greenhood,* 65 Mont. 101, 210 Pac. 1048). This is true, but while a party may not impeach his own witness, in the ordinary manner, he may contradict him and is entitled to the benefit of the contradictory evidence (*Hardie* v. *Peterson,* 86 Mont. 150, 282 Pac. 494), but if, under the rules above governing our consideration here, plaintiff is bound by the testimony of John Ferguson, by what testimony of this witness is he so bound?

John Ferguson in his affidavit used on the preliminary hearing and admitted in evidence, stated: "On the last of July or the 1st of August, 1905, this affiant entered into an agreement with the said Gordon L. Ferguson by which affiant for a valuable consideration, gave to said Gordon L. Ferguson a perpetual easement and right-of-way to travel over affiant's above described land and which right-of-way was clearly marked * * * by a well defined traveled road," etc. In oral examination John Ferguson testified:

"Q. State whether or not along the last of July or first of August, 1905, you had any agreement concerning the right-of-way to Gordon Ferguson for perpetual easement over this land of yours, whether you had any agreement or understanding about that time. A. Yes, we did.

"Q. What was that understanding? A. It was simply an oral agreement he could drive over my land any time and I could drive over his.

"Q. What have you to say as to whether that was to be perpetual or not. A. No, I don't believe it was mentioned that way.

"Q. Did you understand neither could change his mind at all; it was a right that you granted and a right that you had for yourself? A. It was not talked about like that; simply had a right to travel over the land at any time. * * *

"Q. Isn't it true, in connection with your homestead, you had obtained a relinquishment for a certain forty acres of land some time previous? A. Yes, I did.

"Q. Didn't that enter into it also? A. It did not. * * * I did not give him anything for that relinquishment of that forty acres of land."

The cause of this change in the sworn statement of the witness, within a period of four months, can only be surmised from the fact that, in conveying the land in question to the defendant, the witness had not excepted the easement mentioned in his affidavit. The court, noting his demeanor on the stand and the manner in which he testified, may well have discredited entirely his oral testimony and believed his statement made in the affidavit.

Certain findings of the court relative to contemplated changes in the county road prior to 1905, the necessity for plaintiff's use of the coulee road, and "inferences" drawn by the court with regard to the road, are attacked as not being supported by the evidence. These questions we need not determine, as they are not elements of adverse possession or the right by prescription, as hereinafter discussed.

Like complaint is made as to findings reflected in the court's conclusion that "the defendant had personal knowledge and notice that the lands of John Ferguson were burdened with an open, visible, well defined * * * road, * * * and the purchase was made subject to such burdens."

It is clear that defendant knew of the road and its use by plaintiff, but whether or not it constituted a burden on the land as an easement, or the use thereof constituted merely a license which defendant was at liberty to revoke on acquisition of the property, was not shown; but if in fact plaintiff acquired a right by prescription before the transfer of the property from John Ferguson to defendant, defendant's knowledge of that fact was immaterial in this action, that being a matter to be determined between him and his grantor. (See *Mullins* v. *Butte Hardware Co.*, 25 Mont. 525, 87 Am. St. Rep. 430, 65 Pac. 1004.) If the plaintiff's easement by prescription

matured prior to the transfer, John Ferguson could not defeat plaintiff's right by alienating his land.

On the record as a whole we cannot say that the evidence preponderates against any of the findings material to issues involved and necessary to support the judgment.

4. The principal question for determination, raised by specifications of error based on the court's conclusions of law and the granting of the injunction, is as to whether or not the facts developed by the evidence and found by the court establish an easement and right-of-way by prescription.

On this question our statute (sec. 6818, Rev. Codes 1921) merely declares that "occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar an action for the recovery of the property, confers title thereto, denominated a title by prescription, which is sufficient against all." The "period" to which reference is made is ten years (sec. 9015, Rev. Codes 1921), and the "occupancy" which will ripen into title, must be such as to constitute adverse possession, as occupation other than adverse is deemed to have been under and in subordination to the legal title. (Sec. 9018, Id.; *Rude* v. *Marshall*, 54 Mont. 27, 166 Pac. 298; *Miner* v. *Cook*, 87 Mont. 500, 288 Pac. 1016.)

Possession of realty, to be adverse, must be actual, visible, exclusive, hostile and continuous for the full period (*Collins* v. *Thode*, 54 Mont. 405, 170 Pac. 940; *Kenck* v. *Deegan*, 45 Mont. 245, 122 Pac. 746; *Smith* v. *Duff*, 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981); the claim of the possessor must invade the title of the other (*Bullerdick* v. *Hermsmeyer*, 32 Mont. 541, 81 Pac. 334) and be so brought home to him that he is in a position to institute action for possession at all times during the running of the statute of limitations (*Newton* v. *Weiler*, 87 Mont. 164, 286 Pac. 133; *Morrison* v. *Linn*, 50 Mont. 396, 147 Pac. 166; *Blackfoot Land Dev. Co.* v. *Burks*, 60 Mont. 544, 199 Pac. 685). To these requirements has been added that the possessor must have paid all taxes legally levied and assessed upon such land during the period claimed (sec. 9024, Rev. Codes 1921). Occupation under a revocable license precludes acquisition of title by prescription. (*Mc-*

*Donnell* v. *Huffine*, 44 Mont. 411, 120 Pac. 792; *Waddell* v. *School District*, 74 Mont. 91, 238 Pac. 884.)

While each of the above elements of adverse possession must be established in acquiring title to lands in this manner, section 6818, above, authorizes acquisition of easements as well (*McDonnell* v. *Huffine*, above), which title is as effective as though evidenced by a deed. (*Babcock* v. *Gregg*, 55 Mont. 317, 178 Pac. 284), and, owing to the nature of the use and occupancy of an easement and the fact that it does not divest the owner of title to the land over which it extends, not all the requirements of adverse possession of land apply to the acquisition of an easement by prescription. It has been said that an easement by prescription is "analogous" to adverse possession of land (*Quanah etc. R. Co.* v. *Wiseman*, (Tex. Civ. App.), 247 S. W. 695). The occupancy which will ripen into a prescriptive right need be "continuous" only in the sense that the claimant exercise his claimed right without interference at such times as he has need of the use, and it need not be "exclusive" so long as the right does not depend upon a like right of others (*Hays* v. *DeAtley*, 65 Mont. 558, 212 Pac. 296; *Glantz* v. *Gabel*, 66 Mont. 134, 212 Pac. 858; 9 R. C. L. 773, 774). The provision as to payment of taxes has no application to the acquisition of an easement, which is merely appurtenant to the dominant estate and is not taxable separate and apart from it. (*Verwolf* v. *Low Line Irr. Co.*, 70 Mont. 570, 227 Pac. 68; *Stetson* v. *Youngquist*, 76 Mont. 600, 248 Pac. 196.)

Since prescription is founded upon the supposition of a grant, the use or possession of an easement must be adverse or of such a nature as to indicate that it is claimed as a right and not the effect of indulgence or of a compact short of a grant (9 R. C. L. 776), but the claim need not be a valid one; it may rest on either "color of title" or "claim of title" (secs. 9019–9021, Rev. Codes 1921), the first meaning a holding under a written instrument, a statute, or a judgment or decree of court, which appears to convey to or confirm in the holder title but which does not do so in fact; while "claim of title" means merely a "claim asserted by the disseisor of his inten-

tion to appropriate and use the land in question as his own, irrespective of any semblance of color, or right, or title, as the foundation of his claim.'' (*Morrison* v. *Linn,* above.) Under this correct definition of ''claim of title'' it is held that one who holds for the statutory period under a parol grant, void because of the statute of frauds, holds under a ''claim of title'' (*McDonnell* v. *Huffine,* above); but the definition is not restricted to a claim grounded on a parol grant, void merely because the statute of frauds makes it so; an attempted grant may be effective for this purpose though void on other grounds, as, for example, failure of consideration, for adverse possession may be initiated by a mere trespass.

It is, therefore, apparent that the evidence tending to show that the plaintiff's pre-emption filing had in fact lapsed prior to its relinquishment to John Ferguson as consideration for the grant of right-of-way, would not, if believed by the court, defeat plaintiff's right of recovery.

5. Defendant asserts that the court erred in its conclusions of law (a) and (b) above. These findings but follow the law as declared in *Glantz* v. *Gabel,* above, and *Stetson* v. *Youngquist,* above. In the *Glantz Case* it is declared that ''where the claimant has shown an open, visible, continuous and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right and not a license of the owner. In order to overcome this presumption, thereby saving his title from the encumbrance of an easement, the burden is upon the owner to show that the use was permissive only, * * * ; when the claimant's use has thus been open, visible, continuous, unmolested and under a claim of right, the corollary is that it has been adverse to the owner.'' This declaration of the law on the subject is clarified in the *Stetson Case,* as follows: ''Plaintiff constructed his ditch upon defendant's land on the theory that he had a right to do so and has ever since maintained the ditch there. He has shown an open, visible, continuous and unmolested use of the ditch for the period of time sufficient to acquire title by adverse possession. In the absence of any evidence on the subject, the use under

such circumstances is presumed to be under a claim of right and not by license of the owner. In order to overcome this presumption, thereby saving his title from encumbrance of an easement, the burden is upon the owner to show that the use was permissive. When the claimant's use has been thus open, continuous, unmolested, and under a claim of right, it is deemed to have been adverse to the owner."

It is true that in the instant case there was evidence which, if believed by the court, would overcome the presumption discussed, but the record also contains substantial evidence to the contrary, and the court saw fit to accept that which corroborated the testimony of the plaintiff and to reject that which contradicted it. This the court was at liberty to do, and, having determined the conflict in favor of the plaintiff, its decision cannot be disturbed on appeal.

Therefore, plaintiff's showing is that of "an open, visible, continuous and unmolested use of the land of another for the period of time required," under a "claim of right," adverse to the owner, and, as declared by the trial court, "has ripened into a clear easement for right-of-way by prescription."

The court, however, fixed the width of the right-of-way at twenty feet; to this extent the judgment is erroneous; there is no evidence as to the width of the right-of-way acquired. Plaintiff but traveled a trail across the land; the trail had, in places, been graded, but the width of the grade is not stated.

The right of the owner of the dominant estate is governed by the character and extent of the use during the period requisite to acquire it. (*Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254.)

Plaintiff is entitled to the use of the road, without interference or molestation, to the extent and width he used it from 1905 until it was closed by the defendant. This right, of course, includes the right to make necessary repairs on the road and, for that purpose, to use so much of defendant's land as is necessary.

Some apprehension is expressed by counsel for defendant that, under the judgment, plaintiff would be entitled to fence

the "twenty-foot right-of-way." This apprehension is groundless; the character of the easement does not warrant such action.

The cause is remanded to the district court of Cascade county, with direction to strike from the injunction the phrase "the same being a strip twenty feet (20) wide," and substitute therefor "as heretofore used," and, as modified, the judgment will be affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.