Le VASSEUR, Appellant, *v.* ROULLMAN et al., Respond-
ENTS.

(No. 7,006.)

(Submitted February 27, 1933. Decided March 10, 1933.)

[20 Pac. (2d) 250.]

(552)

554

*Mr. H. R. Boden,* for Appellant, submitted a brief and argued the cause orally.

No appearance in behalf of Respondents.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff brought this action to quiet title to residence property in Missoula. He designated as defendants twenty-five persons, supplementing those named with "and all. other persons," etc. Some of the designated defendants disclaimed any interest in the property, four defaulted, and at the trial the plaintiff dismissed as to others.

Prior to her death many years ago the property belonged to Julia Le Vasseur, who died intestate, leaving as her heirs her husband and nine children, one of whom is the plaintiff; the heirs were entitled to the property in the proportions of one-third to the husband and two twenty-sevenths to each of the children.

When the plaintiff began the action, he was, and had been for nearly twenty years, the owner of record of eight twenty-

sevenths interest in the property. In his complaint he alleged himself to be "the complete equitable owner entitled to the fee thereto," and in the peaceable and lawful possession of the premises, that he and his predecessors in interest had "been in the continuous, uninterrupted, and undisputed possession" of the premises for more than ten years prior to the commencement of the action, and that for more than ten years he had "discharged all liens accruing against said premises by reason of imposition of lawful taxes, assessments, insurance, and other encumbrances"; and that defendants, both named and unknown, claim some right, title or interest in the premises adverse to plaintiff, which "claim or claims of defendants is or are without right, foundation, or authority in law or in equity."

When the matter came on for trial, the plaintiff, after showing the condition of the record title, testified that he had been in the exclusive possession of the premises for over ten years, and during that period had paid the taxes and special improvement assessments levied thereon, as well as insurance. Plaintiff's father is dead, but the record does not disclose when he passed away. In answer to the question, "Will you state whether any of these defendants have ever made any claim to this property as heirs of your father and mother during the time you have had exclusive possession of the premises?" he answered, "None except my brother Fred." Fred was one of the defendants whose default was entered. Plaintiff said that none of the defendants had had possession of the premises "during the past ten years" to his exclusion, that none of them had ever brought suit against him for the possession of the premises during that time, nor had any of them "interfered" with his possession. The last question propounded was: "And you claimed title by reason of your long possession exceeding a period of ten years and paying all the taxes, and you have held that *title* openly against all these defendants?" to which he answered, "Yes sir."

The court suggested to plaintiff's counsel that the complaint is insufficient to show acquisition of the property by adverse

possession and gave him leave to amend. Counsel declined to amend, and demanded a decision on the pleadings and the proofs submitted. The court took the matter under advisement, and thereafter rendered judgment that the plaintiff take nothing against the defaulting defendants, and that the action be dismissed. From this judgment the plaintiff has appealed.

If it were necessary for plaintiff, in order to prove title ██ ██ based upon adverse possession, to plead that he had so obtained it, the court was correct in saying the complaint is insufficient. We think it was not necessary.

It is not requisite that plaintiff deraign his title. (*McKay* v. *McDougal*, 19 Mont. 488, 48 Pac. 988.) He need only state the ultimate facts. He need only allege himself to be the owner of the property, describing it, and that the defendant asserts some title thereto adverse to him. (*Slette* v. *Review Pub. Co.*, 71 Mont. 518, 230 Pac. 580, and cases cited.)

The purpose of plaintiff in alleging himself to be "the complete equitable owner entitled in fee" to the property is not clear, but it is sufficient to enable him to maintain the action. "Whatever interest the plaintiff has may be quieted. If a title in fee, such interest may be quieted; if a less interest, the less interest may be likewise quieted." (*McKinnie* v. *Shaffer*, 74 Cal. 614, 16 Pac. 509; *Pollock M. & M. Co.* v. *Davenport*, 31 Mont. 452, 78 Pac. 768.)

If we disregard what may be deemed surplusage in the complaint, we have no difficulty in saying that the pleading, although inartificially drawn, is sufficient. But the proof falls short. Undoubtedly the plaintiff sought to prove that he had acquired title to the entire property by adverse possession. He was in the occupancy of the premises for over ten years prior to the commencement of the action. The occupancy recognized by our statutes (sec. 6818, Rev. Codes 1921), which will ripen into title, must be such as to constitute adverse possession, as occupation other than adverse is deemed to have been under and in subordination to the legal title. (*Ferguson* v. *Standley*, 89 Mont. 489, 300 Pac. 245.) Merely being in exclusive possession is not enough—possession alone, no

matter how exclusive and complete, is not sufficient to create a title by prescription. In order to do that, the possession must be adverse. (*Dobbins* v. *Economy Gas Co.*, 182 Cal. 616, 189 Pac. 1073.)

The possession of realty, to be adverse, must be actual and visible, exclusive, hostile and continued during the time necessary to create a bar under the statute of limitations. (*Collins* v. *Thode*, 54 Mont. 405, 170 Pac. 940, 941; *Kenck* v. *Deegan*, 45 Mont. 245, 122 Pac. 746; *Smith* v. *Duff*, 39 Mont. 374, 102 Pac. 981, 133 Am. St. Rep. 582.) The possession must be "open and notorious, or such as to give the owner of the property either actual knowledge of the hostile claim, or of such a character as to raise a presumption of notice, or so patent that the owner could not be deceived." (*Collins* v. *Thode*, supra.) "The claimant must exercise such acts of ownership and occupancy as are sufficient to 'hoist his flag' over the lands, so that all may observe it." (2 C. J. 76; *McComb* v. *Saxe*, 92 Ark. 321, 122 S. W. 987.) "The claim of the possessor must invade the title of the other (*Bullerdick* v. *Hermsmeyer*, 32 Mont. 541, 81 Pac. 334), and be so brought home to him that he is in a position to institute action for possession at all times during the running of the statute of limitations (*Newton* v. *Weiler*, 87 Mont. 164, 286 Pac. 133; *Morrison* v. *Linn*, 50 Mont. 396, 147 Pac. 166, 168; *Blackfoot Land Dev. Co.* v. *Burks*, 60 Mont. 544, 199 Pac. 685)." (*Ferguson* v. *Standley*, supra.)

According to the proof, when plaintiff became the owner of the eight twenty-sevenths interest in the property, his cotenants were his father and certain of his brothers and sisters. What became of his father's interests the record does not disclose.

Now "one of the incidents of tenancy in common is that each of the co-tenants is entitled to the exclusive possession of the entire property as against the whole world, except his co-tenants." (*Hopkins* v. *Noyes*, 4 Mont. 550, 2 Pac. 280, 283.)

"All acts done by a cotenant and relating to or affecting the common property, are presumed to have been done by him for the common benefit of himself and the others. The relation between him and the other owners is always supposed to be amicable rather than hostile; and his acts are therefore regarded as being in subordination to the title of all the tenants, for by so regarding them they may be made to promote the interests of all. Therefore, as a general proposition, the entry of one cotenant enures to the benefit of all." (Freeman on Cotenancy, 2d ed., sec. 166.) "And, supported by the same reasons, and prevailing to the same extent, is the rule that the continuing possession of a cotenant, whether the entry was made by himself or in connection with his companions, is the possession of all the cotenants." (Id., sec. 167.)

However, one tenant in common may oust his cotenant and make his possession adverse. But, as prima facie the possession of every cotenant is presumed to be by virtue of his title, and not in hostility to the rights of his cotenants, whoever asserts the remedy, to the granting of which the fact of ouster is a prerequisite, must first remove this prima facie presumption. (Id., sec. 222.) In order to sustain the claim that he has obtained title by adverse possession, the claimant must show that his cotenants had sufficient notice of his exclusive and hostile claim.

"It may be stated as the rule, that in all cases the co-tenant must have knowledge of the ouster or disseizer before an adverse possession can be alleged against him. The knowledge must be either brought home to him, or the occupier must make his possession so visibly hostile, notorious and adverse, as to justify an inference of knowledge on the part of the tenant sought to be ousted or disseized, and of laches on his part, should he, under such circumstances, fail to assert his rights." (*Northrop* v. *Marquam,* 16 Or. 173, 18 Pac. 449, 459; and see *Weshgyl* v. *Schick,* 113 Mich. 22, 71 N. W. 323; *Baily* v. *Trammell,* 27 Tex. 317; 38 Cyc. 23.)

The proof in this case is wanting as to an adverse, which is equivalent to a hostile, holding. There is nothing to show

that plaintiff ever "hoisted his flag" or otherwise gave notice to his cotenants that he made any claim to the land except as their cotenant. Indeed, the testimony is barren of any suggestion that he ever denied their title to or rights in the property. Clearly the plaintiff was not entitled to recover upon the proof adduced.

It was necessary for the plaintiff to introduce proof to sustain ▮▮▮▮▮ his action. Section 9487, Revised Codes 1921, provides in part: "Before plaintiff shall be entitled to a decree in such action against any defendant who shall not appear therein, he must produce evidence sufficient to prima facie entitle him to relief, and relief shall be granted only to the extent to which such evidence shall prima facie prove him to be entitled to the same." Upon plaintiff's failure to do this, what was the duty of the court? Plaintiff's counsel argues that what the court did virtually compelled plaintiff to submit to an involuntary nonsuit which, he says, was beyond the court's power under the provisions of section 9317, Revised Codes 1921, which declares that "an action may be dismissed or a judgment of nonsuit entered in the following cases," but none of its seven subdivisions covers a situation such as is presented in this case. Section 9318 provides: "In every case, other than those mentioned in the last section, judgment must be rendered on the merits."

In an equity case, such as this, there is, technically, no such thing as a nonsuit. (*Streicher* v. *Murray*, 36 Mont. 45, 92 Pac. 36.) Plaintiff submitted his case for decision upon proof which was not sufficient to justify a judgment in his favor. Presumably he offered all the evidence he had. As the case then rested, it presented only a question of law. "Whether there is substantial evidence in support of plaintiffs' case is always a question of law for the court." (*Flynn* v. *Poindexter & Orr Livestock Co.*, 63 Mont. 337, 207 Pac. 341, 348.) It was incumbent on the court to decide the case, and there was but one way to decide it, and that was against plaintiff, or not at all. To hold that the court had reached an impasse would involve an absurdity. To the extent that the question

.is one of law it was decided upon the merits. It followed that plaintiff could take nothing. The order of dismissal was but a procedural direction.

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.